PRODUCTION SYSTEMS, INC., PLAINTIFF v. AMERISURE INSURANCE COMPANY AND UNION INSURANCE COMPANY A/K/A THE CHESAPEAKE BAY PROPERTY & CASUALTY INSURANCE COMPANY, DEFENDANTS

No. COA04-580

(Filed 21 December 2004)

**Insurance— liability of insurance company—duty to defend and indemnify—property damage**

The trial court did not err in a declaratory judgment action by granting summary judgment in favor of defendant insurance companies based on the conclusion that defendants were not obligated to defend or indemnify plaintiff under the terms of the pertinent commercial general liability policies for a counterclaim brought by another company, because: (1) both policies restrict

coverage to property damage that is caused by an occurrence and both policies exclude coverage for property damage expected or intended from the standpoint of the insured; (2) the term "property damage" in an insurance policy has been interpreted to mean damage to property that was previously undamaged, and not the expense of repairing property or completing a project that was not done correctly or according to contract in the first instance; and (3) property damage does not refer to repairs to property necessitated by an insured's failure to properly construct the property to begin with, and thus, there was no property damage to the oven feed line systems in this case since the only damage was repair of defects in, or caused by, the faulty workmanship in the initial construction.

Appeal by plaintiff from summary judgment entered 12 December 2003 and 22 December 2003 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 17 November 2004.

*Wyatt Early Harris Wheeler, L.L.P., by Scott F. Wyatt, for plaintiff-appellant.*

*Dean and Gibson, L.L.P., by Susan L. Hofer, for defendant-appellee Union Insurance Co.*

*Carruthers & Roth, P.A., by Kenneth R. Keller, for defendant-appellee Amerisure Insurance Co.*

LEVINSON, Judge.

Plaintiff Production Systems, Inc. (PSI) appeals from an order granting summary judgment in favor of defendants Amerisure Insurance Company and Union Insurance Company. We affirm.

The record evidence is summarized, in pertinent part, as follows: PSI is a corporation based in High Point, North Carolina, and is engaged in the design and manufacture of industrial machinery. Rubatex, Inc., is a corporation doing business in Conover, North Carolina, and is engaged in the manufacture of rubber products. In 1996 PSI entered into a contract with Rubatex to design, construct, and install two "foam rubber sheet line systems" at Rubatex's Conover plant—one with a hot feed ensolite oven and the other with a cold feed ensolite oven. Each line system was to consist of an oven, nine conveyor belts, and associated components, including safety

**PRODUCTION SYS., INC. v. AMERISURE INS. CO.**

[167 N.C. App. 601 (2004)]

and electrical controls, fans, combustion equipment, temperature controls, smoke hood, cooling chambers, and belted conveyor sections. The agreement between PSI and Rubatex further specified that PSI was responsible for designing, building, and installing the two line systems.

PSI began work on the oven line systems in early 1996, using its own employees for some of the contractually required tasks, and hiring subcontractors to perform certain other operations, including installation of the conveyor belts. The oven feed line systems were turned over to Rubatex in the fall of 1996; the cold feed oven line system in October, 1996; and the hot feed oven line system in December, 1996. Rubatex experienced problems with each of the lines almost immediately after they were put into operation. Investigation revealed that certain components of each of the conveyor belts were improperly installed, were misaligned, and would not "track" properly. As a result, neither of the two oven feed line systems operated properly; the defective conveyor belt assemblies caused damage to other parts of the oven line system; and Rubatex had to shut down the line systems repeatedly until repairs were made.

Because of the defects in the oven line systems, Rubatex refused to pay the sums owed to PSI under their contract. PSI filed suit in 1998, seeking recovery of almost $200,000.00 that PSI claimed it was owed. On 15 June 1998 Rubatex filed its answer and counterclaim. Rubatex's counterclaim alleged that PSI had failed to "design, construct and install proper line systems" or to "cure the multiple problems with the line systems[.]" Rubatex brought claims for breach of contract, and for breach of express warranties, implied warranty of fitness, and warranty of merchantability. The counterclaim sought damages for the cost of repairing the two line systems, and for the loss of use of the line systems. The present appeal arises from PSI's attempt to obtain insurance coverage for Rubatex's counterclaim.

In September, 1995, PSI bought a Commercial General Liability (CGL) insurance policy from defendant Amerisure Insurance Company. PSI purchased another CGL policy in September, 1997, from defendant Union Insurance Company. The relevant provisions of the two policies are substantially identical. PSI notified Amerisure and Union after Rubatex filed its answer and counterclaim, and asked each to defend and indemnify PSI with respect to the counterclaim. Both companies contended that there was no coverage under their respective CGL policies, and each refused to defend or indemnify

PSI. Rubatex and PSI reached a settlement of their lawsuits in December, 1999, under the terms of which PSI paid Rubatex $500,000.00. On 22 August 2000 PSI filed suit against Amerisure and Union, seeking, *inter alia*, a declaratory judgment that the companies were obligated to defend and indemnify PSI under the terms of the CGL policies. In November, 2003, PSI, Union, and Amerisure each filed motions for summary judgment. Following a hearing on the summary judgment motions, the trial court on 12 December 2003, and 22 December 2003, entered orders of summary judgment in favor of Amerisure and Union. From these orders PSI appeals.

## Standard of Review

PSI appeals the court's order for summary judgment in favor of defendant insurance companies in the declaratory judgment action filed by PSI. "Questions involving the liability of an insurance company under its policy . . . are a proper subject for a declaratory judgment." *Insurance Co. v. Surety Co.*, 1 N.C. App. 9, 12, 159 S.E.2d 268, 271 (1968). "Summary judgment may be granted in a declaratory judgment proceeding where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law,' N.C.G.S. § 1A-1, Rule 56(c) [(2003)]." *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 178, 581 S.E.2d 415, 422 (2003) (citations and internal quotation marks omitted). "On appeal, this Court's standard of review involves a two-step determination of whether (1) the relevant evidence establishes the absence of a genuine issue as to any material fact, and (2) either party is entitled to judgment as a matter of law." *Guthrie v. Conroy*, 152 N.C. App. 15, 21, 567 S.E.2d 403, 408 (2002) (citations omitted). In the instant case:

> neither party challenges the accuracy or authenticity of the subject insurance polic[ies], or the existence of any relevant facts. Rather, the parties' arguments are based on their respective interpretations of the terms of the insurance polic[ies]. Consequently, the record does not present a genuine issue as to any material fact. We next consider whether either party was entitled to judgment as a matter of law.

*Hobbs Realty & Constr. Co. v. Scottsdale Ins. Co*, 163 N.C. App. 285, 289, 593 S.E.2d 103, 106, *cert. denied*, 358 N.C. 543, 599 S.E.2d 47 (2004).

The issue raised in this appeal is whether the defendant insurance companies had a duty to defend or indemnify PSI in the counterclaim brought by Rubatex.

In North Carolina, the insured "has the burden of bringing itself within the insuring language of the policy. Once it has been determined that the insuring language embraces the particular claim or injury, the burden then shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." *Hobson Construction Co., Inc. v. Great American Ins. Co.*, 71 N.C. App. 586, 590, 322 S.E.2d 632, 635 (1984) (citing *Nationwide Mut. Fire Ins. Co. v. Allen*, 68 N.C. App. 184, 314 S.E.2d 552 (1984)).

"Insurance policies are contracts and as such, their provisions govern the rights and duties of the parties thereto. Where a policy defines a term, this Court must use that definition. If the meaning of the policy is clear on its face, the policy must be enforced as written." *Auto Owners Ins. Co. v. Grier*, 163 N.C. App. 560, 562, 593 S.E.2d 804, 806 (2004) (citation omitted). "An insurer has a duty to defend when the pleadings state facts demonstrating that the alleged injury is covered by the policy[.]" *Penn. Nat'l Mut. Cas. Ins. Co. v. Associated Scaffolders & Equip. Co.*, 157 N.C. App. 555, 558, 579 S.E.2d 404, 407 (2003). Thus, to determine if coverage exists, the Court "compare[s] the complaint with the policy to see whether the allegations describe facts which appear to fall within the insurance coverage." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 72 N.C. App. 80, 84, 323 S.E.2d 726, 730 (1984), *reversed on other grounds*, 315 N.C. 688, 340 S.E.2d 374 (1986) (citation omitted).

In the case *sub judice*, the CGL policies issued to PSI by Amerisure and Union are substantially the same. Each states, in relevant part, that it provides coverage for "sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage.'" Both policies restrict coverage to 'property damage' that "is caused by an 'occurrence'" and both policies exclude coverage for " 'property damage' expected or intended from the standpoint of the insured." We conclude that the dispositive issue in the instant case is whether the facts alleged in Rubatex's counterclaim describe "property damage." The relevant policy definition follows:

15. "Property damage" means: a. Physical injury to tangible property, including all resulting loss of use of that property. . . .

In the instant case, it is undisputed that: (1) PSI contracted with Rubatex to design, construct, and install two oven feed line systems

for Rubatex, each of which included an oven, nine conveyor belts, and associated equipment; (2) PSI, acting alone or through its subcontractor, failed to properly install certain components of the conveyor belts that were part of the completed line systems; (3) as a result this faulty workmanship, Rubatex suffered damages arising from the cost of repairing the line systems and from its loss of use of the line systems while they were disabled; and (4) Rubatex's counterclaim alleged no damages other than the cost of repairing the line systems and the loss of use of the line systems. On these facts, PSI contends that the mistracking of the conveyor belts and damage to other parts of the oven feed line systems, caused by the negligence of its subcontractors, constituted "property damage" arising from an "occurrence." We disagree.

The term "property damage" in an insurance policy has been interpreted to mean damage to property that was **previously undamaged**, and **not** the expense of repairing property or completing a project that was not done correctly or according to contract in the first instance. *Hobson*, 71 N.C. App. 586, 322 S.E.2d 632. In *Hobson*, this Court interpreted a CGL policy containing a functionally identical definition of 'property damage' and held there was no 'property damage' on these facts: The insureds contracted to build a concrete arch dam; within a month of its completion it became apparent that the dam would not hold water. The insureds were sued on their contract for the costs of repairing and completing the dam. The Court noted that the complaint alleged the insureds failed to "construct the concrete arch dam in a workmanlike manner" and that "due to the breach of contract by [insureds, the plaintiffs] incurred damage 'in the nature of repair and cost of completion of the project.' " On this basis, the Court concluded the insureds had "failed to bring their particular injury within the insuring language of the policy." *Id.* at 587, 590-91, 322 S.E.2d at 633, 635.

Relying on *Hobson*, a federal district court in North Carolina recently interpreted a similar CGL policy as follows:

> Under the clear language of the policies, property damage requires . . . that the property allegedly damaged has to have been undamaged or uninjured at some previous point in time. This is inconsistent with allegations that the subject property was never constructed properly in the first place. . . . Not only does the plain language of the policies at issue in the instant case suggest that no 'property damage' has taken place, the clear holding in *Hobson* further compels this court to reach the same conclu-

sion. *Hobson* indicates that damages based solely on shoddy workmanship (i.e., damages seeking repair costs and/or completion costs) are not 'property damage' within the meaning of a standard form CGL policy[.]

*Wm. C. Vick Constr. Co. v. Pennsylvania Nat. Mut.*, 52 F. Supp. 2d 569, 582 (E.D.N.C. 1999). We conclude that under the precedent of *Hobson*, "property damage" does not refer to repairs to property necessitated by an insured's failure to properly construct the property to begin with.

We conclude that there was no "property damage" to the oven feed line systems because the only "damage" was repair of defects in, or caused by, the faulty workmanship in the initial construction. Consequently, we need not address the remaining arguments on appeal. Accordingly, the damage to the oven feed line systems was not covered under either of the policies at issue. The trial court's summary judgment order is

Affirmed.

Judges HUNTER and CALABRIA concur.