BUILDERS MUTUAL INSURANCE COMPANY, Plaintiff v. HENRY A. MITCHELL, JR., Executor of the Estate of CHARLES CECIL McKINNEY and HENRY A. MITCHELL, JR., as TRUSTEE UNDER THE REVOCABLE DECLARATION OF TRUST MADE BY CHARLES C. McKINNEY DATED AUGUST 21, 2001, AS AMENDED AND RESTATED MARCH 21, 2007 AND AS FURTHER AMENDED, UMSTEAD CONSTRUCTION, INC., UMSTEAD CONSTRUCTION GROUP, INC., GARRY K. UMSTEAD, individually, KENNETH STEPHENS, VENTERS CONSTRUCTION INC., and MARYLAND CASUALTY COMPANY, Defendants

No. COA10-553

(Filed 5 April 2011)

**1. Insurance— home construction—issue of fact—defective workmanship or damaging repairs**

The trial court should not have granted summary judgment for an insurance company on the issue of whether a policy covered construction defects where there was an issue of fact as to whether some of the damages were the result of faulty workmanship, which would not be covered, or the result of attempted repairs.

**2. Insurance— home repairs—exclusion**

An insurance exclusion for "your work" would not apply to damages from repair attempts to previously undamaged portions of a house. Such damages would indicate an accident and thus an occurrence covered by the policy.

**3. Insurance— defective home construction and repair—date of injury—issue of fact**

Whether the date of damages to a house from faulty construction and attempts to repair the defects occurred during an insurer's coverage period was a genuine issue of material fact and should not have been resolved by summary judgment.

**4. Insurance— duty to defend—multiple claims**

> An insurance company had a duty to defend claims for defective construction of a house and damaging repairs where the complaint alleged damages that may be covered by the policy. Where there were multiple claims, the duty to defend was triggered if some may be covered even if others were not.

Appeal by Builders Mutual Insurance Company from judgment entered 22 December 2009 by Judge W. Allen Cobb in New Hanover County Superior Court. Heard in the Court of Appeals 17 November 2010.

*Anderson, Johnson, Lawrence, Butler & Bock, L.L.P., by Steven C. Lawrence, Attorney for Plaintiff-appellant*

*Dean & Gibson, PLLC, by Payton D. Hoover, Attorney for Defendant-appellee.*

HUNTER, JR., Robert N., Judge.

Charles McKinney, a homeowner, filed an action against Umstead Construction, Inc., ("Umstead") seeking damages arising from faulty repair of his home. Plaintiff Builders Mutual Insurance Company ("BMI"), Umstead's commercial general liability ("CGL") insurer, defended and settled by paying damages following mediation. BMI subsequently filed for declaratory judgment seeking indemnity from Defendant Maryland Casualty Company ("Maryland Casualty"), a previous CGL insurer, for a portion of the settlement and defense costs. The trial court granted summary judgment for Defendant. Plaintiff appeals.

## I. Factual and Procedural Background

Charles McKinney owned a home on Figure Eight Island. The home had been constructed by Clancy & Theys Construction Company and completed on or about 15 September 1992. Due to the initial poor workmanship, the McKinney home, after some time, experienced water drainage and rot, resulting in damages to the home's interior, marble terraces, and decks. Umstead, the insured, agreed with McKinney to assess and repair the damages. Umstead began its repair work in February 2000 and continued work until December 2005. At that time, McKinney fired Umstead after discovering the work was not being performed in a workmanlike manner and McKinney was being overbilled.

BUILDERS MUT. INS. CO. v. MITCHELL

[210 N.C. App. 657 (2011)]

Umstead had been paid more than $4,300,000.00 at the time it was dismissed. Following this termination, McKinney hired Nick Garret Development, Inc., ("NGDI") to finish the original repairs started by Umstead. NGDI discovered that the defects had not been corrected and the attempted repairs had caused additional damage. For example, water drainage resulted in additional interior and exterior damages.

McKinney filed a complaint on or about 16 February 2007 against Umstead and its subcontractors alleging breach of contract, breach of express and implied warranties, negligence, wilful/negligent misrepresentation, unfair and deceptive trade practices, and fraud ("McKinney Case"). BMI defended Umstead under a reservation of rights, retaining its right to deny coverage depending on information discovered in the case.

Prior to the resolution of the McKinney case, BMI filed a complaint for declaratory judgment against interested parties, including Maryland Casualty.[1] Maryland Casualty's Commercial General Liability ("CGL") policy covered Umstead from 1 March 2000 to 1 March 2003. BMI's policy then covered Umstead from 1 March 2003 to 1 March 2006. Following mediation of the McKinney case, BMI paid a settlement. Maryland Casualty was represented by counsel at the mediation, but did not contribute to the settlement or to the defense of Umstead.

Maryland Casualty moved for summary judgment in the declaratory action against BMI. BMI responded with its own motion for summary judgment, seeking contribution of one-half of the defense costs and one-half of the settlement of the McKinney case. On 22 December 2009, the trial court granted summary judgment in favor of Maryland Casualty and dismissed the case with prejudice. The trial court found Maryland Casualty did not have a duty to defend Umstead and was not liable in the underlying case. After filing notice of appeal, BMI filed a motion for relief from summary judgment, pursuant to Rule 60(b) of the Rules of Civil Procedure, which was denied by the trial court on 4 April 2010.

## II. Jurisdiction and Standard of Review

Plaintiff BMI appeals from the 22 December 2009 order for summary judgment and from the subsequent 4 April 2010 order dismissing

---

1. BMI's Complaint was originally filed incorrectly against Zurich American Insurance. Upon motion by BMI, the trial court ordered that the Complaint be amended to substitute Maryland Casualty for Zurich American Insurance.

**BUILDERS MUT. INS. CO. v. MITCHELL**

[210 N.C. App. 657 (2011)]

its Rule 60(b) motion. We have jurisdiction. *See* N.C. Gen. Stat. § 1-277 (2009) (granting an appeal from final orders of superior court); N.C. Gen. Stat. § 7A-27(b) (2009) (stating appeal shall be to this Court).

The "liability of an insurance company under its policy . . . [is] a proper subject for a declaratory judgment." *Nationwide Mut. Ins. Co. v. Aetna Casualty and Surety Co.*, 1 N.C. App. 9, 12, 159 S.E.2d 258, 271 (1968). Summary judgment shall be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56 (2009). An order granting summary judgment is reviewed *de novo. Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004). The insured "has the burden of bringing itself within the insuring language of the policy." *Hobson Const. Co. v. Great Am. Ins. Co.*, 71 N.C. App. 586, 590, 322 S.E.2d 632, 635 (1984). If it is "determined that the insuring language embraces the particular claim or injury, the burden then shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." *Id.*

### III. Argument

### A. Policy Coverage for "Property Damage"

[1] The Maryland Casualty policy covering Umstead provided coverage for "property damage" caused by an "occurrence." An "occurrence" is defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." As "accident" is not defined in the policy, we turn to the ordinary usage of the word, which has been construed by our Supreme Court to mean "an unforeseen event, occur[r]ing without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence." *Tayloe v. Indemnity Co.*, 257 N.C. 626, 627, 127 S.E.2d 238, 239-40 (1962) (internal quotation marks omitted).

Maryland Casualty argues that all of McKinney's alleged damages fell outside the scope of its coverage, as they were the result of faulty workmanship and not an "occurrence" under the policy. We find there were material facts at issue that must be decided to determine whether there was an "occurrence" covered by the policy, so summary judgment was inappropriate in this case.

**BUILDERS MUT. INS. CO. v. MITCHELL**

[210 N.C. App. 657 (2011)]

It is true that "a claim for faulty workmanship, in and of itself, is not an occurrence under a commercial general liability policy." 9A Couch on Insurance 3d § 129:4; *see also Prod. Sys., Inc., v. Amerisure Ins. Co.*, 167 N.C. App. 601, 607, 605 S.E.2d 663, 666 (2004) (" '[D]amages based solely on shoddy workmanship . . . are not "property damage" within the meaning of a standard form CGL policy.' " (quoting *Wm. C. Vick Constr. Co. v. Pennsylvania Nat. Mut.*, 52 F. Supp. 2d 569, 582 (E.D.N.C. 1999))). There is no coverage for "repairs to property necessitated by an insured's failure to properly construct the property to begin with." *Prod. Sys., Inc.*, 167 N.C. App. at 607, 605 S.E.2d at 666. Faulty workmanship is not included in the standard definition of "property damage" because "a failure of workmanship does not involve the fortuity required to constitute an accident." 9A Couch on Insurance 3d § 129:4. Liability insurance is not intended to act as a performance bond. *W. World Ins. Co. v. Carrington*, 90 N.C. App. 520, 523, 369 S.E.2d 128, 130 (1988) ("Since the quality of the insured's work is a 'business risk' which is solely within his own control, liability insurance generally does not provide coverage for claims arising out of the failure of the insured's product or work to meet the quality or specifications for which the insured may be liable as a matter of contract."). Thus, for any damages regarding the cost of repairing the faulty workmanship itself, the Maryland Casualty policy would not apply, because the damages for such repair costs would not constitute "property damage" as defined by the policy. However, we agree with BMI that McKinney's claims were not limited to costs associated only with repairs to the faulty workmanship itself.

An "occurrence" as defined by a CGL policy *can* be "an accident caused by or resulting from faulty workmanship *including damage to any property other than the work product.*" 9A Couch on Insurance 3d § 129:4 (emphasis added). The distinction is that the damage must be to property "other than the work product." *Id.* The trial court in the present case relied on *Prod. Sys., Inc.*, which found no "property damage" where the only damage was "repair of defects in, or caused by, the faulty workmanship in the initial construction." 167 N.C. App. at 607, 605 S.E.2d at 667. A close reading of *Prod. Sys., Inc.*, however, allows for coverage where the property damaged was not part of the work product itself.

We have explained that our courts have interpreted "property damage" to mean "damage to property that was *previously undamaged* and *not* the expense of repairing property or completing a project that was not done correctly or according to contract in the first

instance." *Id.* at 606, 605 S.E.2d at 666. Whether damage to previously undamaged property is covered depends on whether the damage was an "accident" under the ordinary meaning of the word.

H. Randy Waters, who was hired from NGDI to evaluate the work done by Umstead, provided an affidavit as part of BMI's response and submission in opposition to Maryland Casualty's motion for summary judgment. His affidavit included evidence of at least two instances where damage was done to previously undamaged portions of the home, which had been completed by Clancy & Theys and were not part of the work product of Umstead. In discussing the water intrusion from problems with the roof and gutter system, Waters stated that "[t]he water damage resulting from Umstead Construction, Inc.'s work resulted in damage to interior components of the home that had not been previously damaged." He also stated that NGDI was "required to replace interior tile, carpeting, shelving, trim and bathroom accessories and paint, which had been damaged as a result of water leakage and Umstead's failure to protect these components from physical damage during construction."

In both of these instances, the property damaged was previously undamaged and was not a part of the work product of Umstead. The credibility, expertise, and knowledge of Waters, which was questioned by Maryland Casualty, cannot be settled by summary judgment. For purposes of summary judgment, we must assume the facts in Waters' affidavit are true. *See Collingwood v. General Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) ("All inferences of fact from the proofs offered at [a summary judgment] hearing must be drawn against the movant and in favor of the party opposing the motion.").

In *Iowa Mutual Ins. v. Fred M. Simmons, Inc.*, our Supreme Court examined the definition of "accident" in the context of water damage to interior portions of a building. 258 N.C. 69, 128 S.E.2d 19 (1962). There, a company which contracted to re-roof an office building removed the roof and, when it began to rain, immediately covered the uncovered roof with a waterproof covering, putting down heavy material to keep the cover in place. *Id.* at 71, 128 S.E.2d at 20. Nevertheless, some rain did seep in and cause damage to the inside of the building, which was previously undamaged. *Id.* In determining that the damage might be an "accident," the Court made it clear that whether the damage was caused by the insured's negligence was not relevant to determining coverage. *See id.* at 78, 128 S.E.2d at 25. ("To

adopt the narrow view that the term 'accident' in liability policies of insurance, as in the policy here, necessarily excludes negligence would mean that in most, if not all, cases the insurer would be free of coverage and the policy would be rendered meaningless."). The parties disagreed about whether the damage was an "accident." The Court ultimately found that "this is such an issue of fact as should be determined by a jury under proper instructions of the court." *Id.* at 79, 128 S.E.2d at 26.

In this case, Mr. Waters' affidavit alleges that Umstead's work on the roof and gutter system caused damage to previously undamaged portions of the home. It also alleges that Umstead's failure to protect previously undamaged portions of the home resulted in damages to interior property. Either of these may indicate an "accident" happened and thus there was an "occurrence" covered by the policy.

The fact that the accident may have arisen from Umstead's negligence does not prohibit coverage. There is no indication that Umstead intended or expected this damage. *See Waste Mgmt. of Carolina, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 696, 340 S.E.2d 374, 380 (1986) ("Whether events are 'accidental' and constitute an 'occurrence' depends upon whether they were expected or intended from the point of view of the insured."). The extent and nature of the damage to previously undamaged property is a genuine issue of material fact that is properly decided by a jury. Having alleged sufficient facts to put some of the damages within the coverage of the policy, the burden shifts to the insurance company to prove an exclusion applies. *Hobson Const. Co.*, 71 N.C. App. at 590, 322 S.E.2d at 635.

## B. Exclusions

[2] Maryland Casualty claims the "your work" exclusion would apply to all of the damage alleged, as the damage was a result of Umstead's work. "Your work" is defined by the policy to be "[w]ork or operations performed by [the insured] or on [the insured's] behalf" and also includes "[m]aterials, parts or equipment furnished in connection with such work or operations." Although this would exclude Umstead's faulty workmanship itself from coverage, it would not exclude damage to the completed, undamaged work of Clancy & Theys that was not the subject of Umstead's repairs.

It is unclear which exclusion Maryland Casualty is claiming applies in this case. The exclusions listed in section I.A.2.j(5) and (6) of Maryland Casualty's insurance policy covering Umstead concern

"that particular part of" property on which the insured is working. The words "particular part of" limit these exclusions to the work itself. Section I.A.2.k of the policy excludes " '[p]roperty damage' to 'your product' arising out of it or any part of it." This provision only applies to "your product," which is the work of the insured. Section I.A.2.l of the policy excludes " '[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.' " Again, this only applies to damage to "your work." None of these exclusions apply to previously undamaged property that is not part of the insured's work product.

In *W. World Ins. Co.*, the Court found that a work product exclusion applied, but only after drawing a distinction between the case before the Court, where the only claim was for costs to replace the defective work, and other cases where the damages involved costs other than those for repairing or replacing the work product. 90 N.C. App. 520, 369 S.E.2d 128.

Maryland Casualty seeks a definition of "your work" that would include all damage arising out of Umstead's work, even damage to property other than the work product itself. This reading would be too broad. Waters' statements refer to damages done to property other than Umstead's work as defined by the policy. Maryland Casualty has not met its burden of showing the applicability of an exclusion. *See Nationwide Mut. Fire Ins. Co. v. Allen*, 68 N.C. App. 184, 188, 314 S.E.2d 552, 554 (1984) ("Once it has been determined that the insuring language embraces the particular claim or injury, the burden then shifts to the insurance company to prove a policy exclusion excepts the particular injury from coverage."). Whether this damage occurred and the extent of such damage are genuine issues of material fact to be decided at trial.

## C. Period of Coverage

[3]  The trial court found Maryland Casualty was not liable under the holding in *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 524 S.E.2d 558 (2000). "[W]here the date of the injury-in-fact can be known with certainty, the insurance policy or policies on the risk on that date are triggered." *Id.* at 303, 524 S.E.2d at 564. Maryland Casualty argues that the date of the injury-in-fact in this case cannot be known with certainty, and thus the injury-in-fact test is not the appropriate standard. Whether the date can be known with certainty is a genuine issue of material fact and should not have been resolved by summary judgment.

Waters' affidavit alleges damages that happened during the Maryland Casualty coverage period. Waters first states, "Regarding the time frame within which damage would have occurred[,] . . . our investigation indicated that damage began occurring to the home at the time that certain work was performed that allowed water intrusion into the home, including work related to the roof and sheathing, and the internal roof/gutter drainage system of the home." His affidavit then details the timeline for the work performed on the roof and gutter system from June 2000 through January 2003. He goes on to explain that "[w]ater intrusion damage would have begun at the time of the first significant rain after the original work was performed by Umstead Construction on siding, exterior trim, roofing and gutter drainage, doors and windows, and would have continued through the time that we completed our repairs and reconstruction." The inference could be drawn that water damage caused by the roofing problems occurred during the Maryland Casualty Period, as Umstead's original work on the roofing and gutter systems was first performed during that period.

In addition, Waters stated that "approximately two-thirds (2/3) to 70% of the damages would have more likely than not occurred between early 2000 and February 28, 2003, although the continuation of water intrusion based upon improper work on the roofing, gutter and drainage system which was performed prior to February 28, 2003, would have continued until we eventually corrected the defective work after we began work on the project in 2006." Whether these statements establish a date that can be "known with certainty" is a matter of fact for trial and not appropriate for summary judgment.[2]

## D. Duty to Defend

[4] The trial court found that Maryland Casualty had no duty to defend. Because the Complaint alleged damages that may be covered by the policy, we hold that Maryland Casualty did have a duty to defend Umstead in the McKinney case.

The duty to defend is broad and is independent of the duty to pay. *Waste Mgmt. of Carolina, Inc. v. Peerless Ins. Co.*, 315 N.C. at 691, 340 S.E.2d at 377 (1986) ("When the pleadings state facts demon-

---

2. BMI argues that since the affidavit indicates between two-thirds and seventy percent of the damage was done during Maryland Casualty's period, their request for one-half of the settlement amount and defense costs eliminates any issue of fact. We disagree and conclude that the proportion of damage attributable to the Maryland Casualty coverage period is an issue of fact for the jury.

strating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable.").

"Although the insurer's duty to defend an action is generally determined by the pleadings, facts learned from the insured and facts discoverable by reasonable investigation may also be considered." *Duke Univ. v. St. Paul Fire & Marine Ins. Co.*, 96 N.C. App. 635, 638, 386 S.E.2d 762, 764 (1990). There is a duty to defend "[w]here the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy." *Waste Mgmt. of Carolinas, Inc.*, 315 N.C. at 691-92, 340 S.E.2d at 377-78. This is true even where the facts appear to be outside coverage or within a policy exception. *Id.* If the insurer fails to defend, it is "at his own peril: if the evidence subsequently presented at trial reveals that the events are covered, the insurer will be responsible for the cost of the defense." *Id.* In *Waste Mgmt. of Carolinas, Inc.*, the Court noted that "the modern acceptance of notice pleading and of the plasticity of pleadings in general imposes upon the insurer a duty to investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources." *Id.*

Any doubt as to coverage is to be resolved in favor of the insured. *Id.* at 693, 340 S.E.2d at 378. "If the claim is within the coverage of the policy, the insurer's refusal to defend is unjustified even if it is based upon an honest but mistaken belief that the claim is not covered." *Duke Univ.*, 96 N.C. App. at 637, 386 S.E.2d at 764.

As discussed above, there are facts alleged which, if true, point to "property damage" as defined by the policy. The Complaint by McKinney alleged that, "[d]ue to [Umstead's] conduct, as described herein, [McKinney has] suffered damages to [his] home including, but not limited to, excessive moisture levels within the walls and exterior and interior wood and interior and exterior damages, all of which has resulted in substantial diminution in the value of [his] home." These damages were alleged to result from a list of defects including "improper or inadequate installation of roof materials including flashing" and "improper and inadequate installation of the gutter system." McKinney's request for damages included "all other costs necessary to completely repair Plaintiff's house (including interior damage and landscaping) or in the alternative, the diminution in value of Plaintiff's house." Although the Complaint did not specifically allege damage to previously undamaged portions of the home, the interior damage alleged and substantial diminution in value both suggest

damage to previously undamaged portions of the home. Where, as here, there are multiple claims, if some of the claims may be covered, even if others are not, the duty to defend is triggered. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 735, 504 S.E.2d 574, 578 (1998). With a quick look at the invoices from Umstead, Maryland Casualty would have seen that the roof and gutter damages may have occurred during their period of coverage. There was a duty to defend, which is independent of the duty to pay, and Maryland Casualty should have defended the underlying action.

## IV. Conclusion

There is a genuine issue of material fact as to whether there was "property damage" as defined by the policy, because there are allegations of damage to previously undamaged property that could constitute an "accident" and thus an "occurrence" under the policy. These allegations would not be prohibited by the "your work" exclusion, since they are not damages to the work product itself. There is also a genuine issue of material fact as to whether the damage occurred during Defendant's period of coverage. As such, summary judgment was inappropriate, and the case should be remanded for determinations of fact on these issues. In addition, Defendant had a duty to defend based on the allegations of the Complaint, facts Defendant knew or should have known, and the broad definition of the duty as set forth in our case law. We therefore reverse and remand to the trial court for further proceedings in accordance with this opinion.

Reversed and Remanded.

Judges STEELMAN and STEPHENS concur.