ALLIANCE MUTUAL INSURANCE COMPANY, Plaintiff v. GLEN DOVE, d/b/a
DOVE'S WELDING, Defendant

No. COA10-1395

(Filed 16 August 2011)

**Insurance—commercial—exclusion—grain elevator repair**
    Given precedent and the policy that insurance policies are
construed in favor of the insured, the trial court did not err in an
action arising from a grain elevator repair and explosion by grant-
ing summary judgment in part for defendant on a declaratory
judgment action to determine the effect of an exclusionary clause
in defendant's commercial insurance policy.

Appeal by plaintiff from order entered 14 June 2010 by Judge W.
Erwin Spainhour in Scotland County Superior Court. Heard in the
Court of Appeals 13 April 2011.

> *Pinto Coates Kyre & Brown, PLLC, by David L. Brown and
> Brady A. Yntema, for plaintiff-appellant.*

> *Anderson, Johnson, Lawrence, Butler & Bock, L.L.P., by Robert
> A. Hasty, Jr. and J. Stewart Butler, III, for defendant-appellee.*

STEELMAN, Judge.

The exclusion clause in the commercial liability insurance policy
must be narrowly construed to limit its application to the "specific
part of any property that must be restored, repaired, or replaced
because of faults in **your work**." We affirm the summary judgment
ruling of the trial court.

## I. Factual and Procedural Background

Murphy-Brown owns and operates a feed mill in Laurinburg.
Murphy-Brown contracted with Glen Dove d/b/a Dove's Welding &
Fabrication ("defendant") to repair a broken elevator belt in a grain
elevator. Grain was delivered by rail to the feed mill where it was
ground into a powder that was lifted by the grain elevator to the top
of silos for discharge and storage. The broken elevator belt was
located in an elevator duct which connected the grain powder pit to
the top of the silos. Defendant cut holes in the metal elevator duct in
order to reach in and pull out the broken belt and splice it back
together. After completing the work, defendant repaired the hole in
the elevator duct by welding the metal back in place. On 30 December

2005, just after defendant had welded the metal back onto the elevator duct, the grain dust ignited, causing an explosion in the elevator. On 24 July 2008, Murphy-Brown filed a complaint against defendant for negligence, seeking to recover monetary damages for the cost to repair and replace the rail receiving bucket elevator, the cost to repair and replace the rail receiving leg, the cost of having to bring grain in by truck rather than by rail as a result of the damaged rail elevator, and damages incurred for business interruption and lost revenue.

Alliance Mutual Insurance Company ("plaintiff") had issued a Commercial Liability Policy to defendant that was in effect at the time of the explosion. Defendant forwarded a copy of the Murphy-Brown complaint to plaintiff. On 5 September 2008, plaintiff acknowledged receipt of the complaint, and advised defendant that it would provide defendant with a defense to the lawsuit under reservation of rights. On 27 February 2009, plaintiff filed a complaint against defendant seeking a declaratory judgment that its commercial liability policy did not provide liability coverage for the claims asserted in the Murphy-Brown lawsuit and that plaintiff had no duty to defend defendant in the Murphy-Brown lawsuit or indemnify defendant for any claims raised in the Murphy-Brown lawsuit.

Both plaintiff and defendant made motions for summary judgment. On 14 June 2010, the trial court entered an order granting summary judgment for plaintiff in part and for defendant in part, but disposing of the entire case. The trial court held that the commercial liability policy did not cover damages for the cost to repair and replace the rail receiving bucket elevator, but that the policy did provide coverage for the cost to repair and replace the rail receiving leg, the cost of bringing grain in by truck, as a result of the damaged rail elevator, and damages incurred due to business interruption and lost revenue.

Plaintiff appeals. Defendant did not appeal the portion of the trial court's ruling excluding coverage for the cost to repair and replace the bucket elevator.

## II. Commercial Liability Policy

In its only argument, plaintiff contends the trial court erred in granting summary judgment in favor of defendant, and in failing to grant summary judgment for plaintiff on all issues. We disagree.

ALLIANCE MUT. INS. CO. v. DOVE

[214 N.C. App. 481 (2011)]

### A. Standard of Review

The "liability of an insurance company under its policy . . . [is] a proper subject for a declaratory judgment." *Nationwide Mut. Ins. Co. v. Aetna Casualty and Surety Co.*, 1 N.C. App. 9, 12, 159 S.E.2d 268, 271 (1968). Summary judgment shall be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A–1, Rule 56 (2009). An order granting summary judgment is reviewed *de novo. Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004). The insured "has the burden of bringing itself within the insuring language of the policy." *Hobson Const. Co. v. Great Am. Ins. Co.*, 71 N.C. App. 586, 590, 322 S.E.2d 632, 635 (1984). If it is "determined that the insuring language embraces the particular claim or injury, the burden then shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." *Id.*

*Builders Mut. Ins. Co. v. Mitchell*, ___ N.C. App. ___, ___, 709 S.E.2d 528, 531 (2011).

### B. Damages to Property other than Bucket Elevator

The parties do not dispute that the events underlying this action fall within the insuring language of the policy in question, but instead focus entirely on whether or not the underlying events are removed from coverage by an exclusion clause in the policy.

The exclusion clause at issue is the "your work" exclusion clause. The relevant portion of the exclusion clause reads:

**We** do not pay for **property damage** to that specific part of any property that must be restored, repaired, or replaced because of faults in **your work**.

The policy defines property damage as:

a. physical injury or destruction of tangible property; or

b. the loss of use of tangible property whether or not it is physically damaged. Loss of use is deemed to occur at the time of the **occurrence** that caused it.

"Your work" is defined as:

  a. work or operations performed by **you** or on **your** behalf;

  b. materials, parts, and equipment supplied for such work or operations;

  c. written warranties or representations made at any time regarding quality, fitness, durability, or performance of any of the foregoing; and

  d. providing or failing to provide warnings or instructions.

Plaintiff contends that this exclusion clause precludes coverage under the insurance policy for any of the damages sought by Murphy-Brown in the underlying lawsuit.

The parties do not direct us, and we have not found any North Carolina cases construing the precise exclusion clause in question. However, more general principles of North Carolina insurance law do provide guidance. "Any ambiguity must be strictly construed in favor of the insured. Exclusions from and exceptions to undertakings by the company are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by the policy." *City of Greenville v. Haywood*, 130 N.C. App. 271, 275, 502 S.E.2d 430, 433 (1998) (citations and quotations omitted), *disc. review denied*, 349 N.C. 354, 525 S.E.2d 449 (1998). "If it is determined that the insuring language embraces the particular claim or injury, the burden then shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." *Builders*, ___ N.C. App. at ___, 709 S.E.2d 528, 531 (quotation omitted). The purpose of a work product exclusion clause in a contract of insurance has been described as follows:

> Since the quality of the insured's work is a "business risk" which is solely within his own control, liability insurance generally does not provide coverage for claims arising out of the failure of the insured's product or work to meet the quality or specifications for which the insured may be liable as a matter of contract. . . . The cases interpreting this kind of exclusion recognize, as we do, that *liability insurance policies are not intended to be performance bonds*.

*Barbee v. Harford Mutual Ins. Co.*, 330 N.C. 100, 103, 408 S.E.2d 840, 842 (1991) (quoting *Western World Ins. Co. v. Carrington*, 90 N.C. App. 520, 523, 369 S.E.2d 128, 130 (1988)).

The "specific part" of the property on which defendant was working and for which insurance coverage is excluded is the rail receiving bucket elevator.

Plaintiff asserts the instant case is controlled by *Barbee v. Hartford Mutual Ins. Co.*, 330 N.C. 100, 408 S.E.2d 840 (1991). In *Barbee*, on two separate occasions, employees working at a "Precision Tune" while replacing the spark plugs in an automobile dropped a foreign object through an opening for a spark plug. Later, when the automobiles were operated, the foreign objects damaged the engines. The court in *Barbee* held that the following exclusion clause precluded coverage for the damaged engines: "This insurance does not apply to: 4. Faulty work you performed." *Id.* at 102, 408 S.E.2d at 841. We hold that the exclusion cause in the insurance policy at issue in *Barbee* contained broader language than the clause implicated in the instant case.

The exclusion clause at issue in the instant case excludes coverage for "**property damage** to that specific part of any property that must be restored, repaired, or replaced because of faults in **your work**." The exclusion clause in *Barbee* was not limited to the specific part of property that was damaged by faults in the insured's work. The *Barbee* exclusion clause broadly stated that it applied to all faulty work performed by the insured. The *Barbee* exclusion clause was construed by the North Carolina Supreme Court to apply not only to work done by the insured but also to the consequential damages caused by that work. The exclusion clause at issue in the instant case is much narrower, and applies only to that specific part of the property damaged by the insured.

Several other jurisdictions have construed exclusion clauses similar to the one at issue in the instant case. In *Acuity v. Burd & Smith Const., Inc.*, 721 N.W.2d 33 (N.D. 2006), the Supreme Court of North Dakota construed an exclusion clause that excluded property damage to:

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the property damage arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

*Id.* at 37. The court in *Acuity* held that that exclusion clause did not exclude coverage for damage to the interior of an apartment building when the insured had been hired to reroof the building. *Id.* The opinion discussed the distinction between "business risks," which are those risks that due to faulty workmanship the end product will not conform to the agreed upon contractual requirements, and the risk that faulty workmanship will cause injury to persons or damage to other property. *Id.*

In *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 76-77 (Mo. 1998), the Missouri Supreme Court construed the following exclusion clause: "[t]hat particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the 'property damage' arises out of those operations." *Id.* at 76-77. In *Schauf*, Schauf had been hired to paint, stain, and lacquer the entire interior and exterior of a house. After lacquering the kitchen cabinets he was cleaning his spray equipment inside the house when his generator started a fire that caused damage throughout the home. The court in *Schauf* applied the exclusion clause only to the kitchen cabinets, holding "the kitchen cabinets were the particular part of the real property that was the subject of Schauf's operations at the time of the damage." *Id.* at 81.

The United States District Court in Wisconsin construed a similar exclusion clause in *Minergy Neenah, LLC v. Rotary Dryer Parts, Inc.*, No. 05-C-1181, 2008 WL 1869040 (E.D.Wis. April 24, 2008) (unpublished). The exclusion clause at issue in that case excluded coverage for: "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." *Id.* at *1. Rotary Dryer was hired to work on steam tubes that composed part of a larger industrial dryer system. The removal and replacement of the steam tubes constituted the primary focus of Rotary Dryer's work; however, Rotary Dryer was also to examine the shell of the dryer for any cracking and repair any cracks found. While Rotary Dryer was working on the steam tubes a fire broke out and caused substantial damage to the dryer. The court in Rotary Dryer concluded that only coverage for damage to the steam tubes was excluded, stating:

> If [the insurance company] wants to exclude coverage for property damage to the entirety of the property on which its insured performs work, instead of 'that particular part' of the property on which work is performed, it should say so. But the court may not by judicial construction do the job for it. I thus conclude that

even [though Rotary Dryer's contract referred to correcting cracks in the dryer shell], the damage caused to the dryer shell is more like the typical collateral damage covered by a [commercial general liability] policy than a business risk to be borne by the insured.

*Id.* at *7.

In light of our longstanding policy of construing insurance policies in favor of the insured, that insurers bear the burden of proving that claims fall within exclusion clauses, that commercial liability insurance policies are not designed to provide coverage for "business risks," the distinctions between the instant case and *Barbee,* and the similar exclusion clauses construed by other jurisdictions, we hold that the trial court did not err in finding that the exclusion clause in the instant case only excluded coverage for damage to the rail receiving bucket elevator.

### C. Lost Revenue and Consequential Damages

Plaintiff also argues that because coverage was excluded for damage to the rail receiving bucket elevator that the portion of the lost revenue and other consequential damages attributable to the damage to the rail receiving bucket elevator should also be excluded.

The exclusion clause at issue states that "we do not pay for **property damage** to that specific part of any property that must be restored, repaired, or replaced because of faults in **your work**." As discussed above, in addition to the fact that insurance policies are to be construed in favor of the insured, "[e]xclusions from and exceptions to undertakings by the company are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by the policy." *Haywood,* 130 N.C. App. at 275, 502 S.E.2d at 433 (quotation omitted). These policies favor construing the exclusion clause as narrowly as possible, and the burden is on the insured to prove that the exclusion clause applies. The plain language of the exclusion clause speaks of excluding damages to that specific part of any property that has been damaged by the insured's work, but does not mention lost revenue or consequential damages flowing from the damage to the specific part of any property damaged by the insured. Considering the policy requiring that exclusion clauses be narrowly construed and the plain language of the exclusion clause, we hold the exclusion clause does not cover lost revenue and other consequential damages.

We further note that to adopt the plaintiff's very broad reading of the exclusion clause would result in the exclusion clause swallowing up the whole of the commercial liability policy, and render any coverage contained therein illusory.

If the plaintiff had wanted to exclude loss of use and consequential damages flowing from damage to specific property that the insured was working on it could have explicitly stated so in the exclusion clause. The trial court properly concluded that the exclusion clause only excludes damages to the "specific part of any property that must be restored, repaired, or replaced because of faults in **your work**," i.e. the rail receiving bucket elevator.

### D. *Builders Mut. Ins. Co. v. Mitchell*

Both parties have cited the recent case of *Builders Mut. Ins. Co. v. Mitchell*, —— N.C. App. ——, 709 S.E.2d 528 (2011) in support of their respective positions. While the facts of *Builders* are somewhat different from the instant case, a portion of the analysis contained therein supports the holding set forth above.

In *Builders* a home on Figure Eight Island was damaged due to water intrusion related to faulty construction work performed by Umstead Construction, Inc. ("Umstead") between 2000 and 2005. Maryland Casualty Company provided Umstead with insurance coverage from March 2000 to March 2003. Builders Mutual Insurance Company ("BMI") provided Umstead with coverage from March 2003 to March 2006. BMI settled the homeowners' claim against Umstead. BMI then filed a declaratory judgment action seeking contribution of one-half of the settlement and related defense costs from Maryland Casualty. The trial court granted summary judgment in favor of Maryland Casualty, and BMI appealed to this Court. We held that genuine issues of material fact existed and remanded the case to the trial court for further proceedings.

*Builders* examined the extent of the coverage afforded by the Maryland Casualty policy, exclusions to that coverage, the period of coverage, and the duty to defend. Its primary focus was whether there was an "occurrence" under the terms of the policy so that the homeowners' claims were covered under the policy. The opinion also discussed the "your work" exclusion clause contained in the policy. This Court noted that it was unclear which portion of the exclusion clause Maryland Casualty contended was applicable. However, this Court clearly stated that "Maryland Casualty seeks a definition of 'your work' that would include all damage arising out of Umstead's

work, even damage to property other than the work product itself. This reading would be too broad." *Builders* —— N.C. App. at ——, 709 S.E.2d at 533. *Builders* held that Maryland Casualty had "not met its burden of showing the applicability of an exclusion." *Id.* at ——, 709 S.E.2d at 533-34. This narrow construction of the "your work" exclusion is consistent with our holdings in this case.

## III. Conclusion

We affirm the ruling of the trial court that the "your work" exclusion clause in defendant's insurance policy is limited to damage "for the cost to repair and replace the rail receiving bucket elevator," and that the policy "provides coverage for the cost to repair and replace the rail receiving leg, the cost of trucking in grain . . . as a result of the damaged rail elevator, damages incurred as a result of business interruption, and lost revenue . . . ."

AFFIRMED.

Judges STEPHENS and HUNTER, JR., ROBERT N. concur.