HARLEYSVILLE MUTUAL INSURANCE COMPANY, Plaintiff v. BERKLEY INSURANCE COMPANY OF THE CAROLINAS, Defendant

No. COA04-1010

(Filed 5 April 2005)

**Insurance— liability insurance—synthetic stucco—timing of coverage—acts or omissions before policy date**

The trial court did not err by ordering summary judgment for defendant in a declaratory judgment action between insurance companies arising from synthetic stucco provided by RGS Builders, which was insured by plaintiff previously and by defendant when the complaint was filed. Any acts or omissions

HARLEYSVILLE MUT. INS. CO. v. BERKLEY INS. CO. OF THE CAROLINAS

[169 N.C. App. 556 (2005)]

by the insured (RGS) occurred prior to the effective date of defendant's policy.

Appeal by plaintiff from order entered 29 March 2004 by Judge Anderson D. Cromer in Guilford County Superior Court. Heard in the Court of Appeals 10 March 2005.

*Pinto Coates Kyre & Brown, P.L.L.C., by David L. Brown and Deborah J. Bowers, for plaintiff-appellant.*

*Carruthers & Roth, P.A., by Kenneth R. Keller, for defendant-appellee.*

TIMMONS-GOODSON, Judge.

Harleysville Mutual Insurance Company ("plaintiff") appeals the trial court order granting summary judgment in favor of Berkley Insurance Company of the Carolinas ("defendant"). Because we conclude that defendant was neither required to extend liability coverage nor defend a suit, we affirm the trial court order.

The facts and procedural history pertinent to the instant appeal are as follows: On 11 April 1993, RGS Builders, Inc. ("RGS") entered into a contract with Mr. and Mrs. K.C. Desai (collectively, "the Desais"), whereby RGS was to serve as contractor during the construction of the Desais' residence. Construction of the residence was completed in 1994, and the Desais were issued a certificate of occupancy on 15 December 1994. The residence included an exterior insulation finish system ("EIFS") commonly known as "synthetic stucco."

In May 1996, the Desais' residence was inspected by Prime South Construction ("Prime South"). Prime South found that portions of the residence contained medium and high moisture levels that should be further investigated by the Desais. As a result of Prime South's investigation, and in an effort to correct the water intrusion, RGS subsequently performed repairs to the residence. In May 1997, the Desais hired B.B. & Associates ("B.B.") to conduct another inspection of their residence. In a report dated 4 June 1997, B.B. recommended that the Desais "[s]eal all penetrations through the stucco system, including but not limited to receptacles, light fixtures, vents, [and] pipes[,]" as well as "[c]ontinue to seal and maintain jamb/sill connection of windows." B.B. noted that "[t]he kick outs do not have sealant where the flashing meets the stucco system[,]" and B.B. instructed the Desais to correct this problem.

On 6 April 2000, Criterium-McClancy Engineers ("McClancy Engineers") performed a third inspection of the residence. In a report dated 5 May 2000, McClancy Engineers summarized its findings as follows:

> We observed numerous examples of improper installation details of the EIFS cladding and violations of applicable building codes.
>
> In addition, we measured elevated moisture levels in many areas, which we attribute to the improper installation of the system.
>
> Because of the widespread incidence of improper installation details, the evidence of generally elevated moisture levels and the potential for further moisture penetration and subsequent structural damages, we conclude the overall installation is defective. Because of technical problems associated with the critical construction details, we do not believe the system can be repaired and we recommend that the EIFS synthetic stucco surface be removed and replaced.

On 16 May 2000, the Desais filed a complaint against RGS, alleging negligence, negligent misrepresentation, breach of implied warranty, breach of contract, and unfair and deceptive trade practices with respect to the installation of the synthetic stucco. RGS subsequently forwarded the complaint to both plaintiff and defendant as potential insurers. Plaintiff had previously provided RGS with commercial general liability coverage, and, by virtue of a policy effective 1 May 1997, defendant was currently providing commercial general liability coverage to RGS. Plaintiff agreed to aid in RGS's defense and to provide RGS with insurance coverage. By way of a letter dated 21 June 2000, defendant declined to provide RGS with insurance coverage related to the suit, stating that the property damage and the Desais' discovery of it occurred prior to 1 May 1997, the date defendant's coverage of RGS began.

On 15 August 2001, plaintiff sent a letter to defendant asking defendant to reconsider its position on the suit in light of the allegations of the Desais' complaint and this Court's decision in *Bruce-Terminex Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 504 S.E.2d 574 (1998). In response, defendant sent plaintiff a letter dated 4 September 2001, in which defendant again declined to provide RGS with insurance coverage related to the suit, citing the language of its policy with RGS as well as the Supreme Court's decision in *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 524 S.E.2d 558 (2000). Plaintiff and defendant exchanged similar corre-

spondence in February 2002, with defendant continuing to maintain its position of denying RGS coverage related to the suit.

On 7 June 2002, the Desais settled their suit against RGS for the sum of $87,500.00. On 13 June 2002, the Desais dismissed their claim against RGS with prejudice. Plaintiff subsequently made payment on behalf of RGS in the full amount of settlement, and, on 24 January 2003, plaintiff filed a declaratory judgment complaint against defendant. In its complaint, plaintiff alleged that defendant's insurance policy with RGS was triggered by the Desais' suit, and that therefore, plaintiff was entitled to payment from defendant for the settlement amount as well as any costs and expenses related to the settlement. On 13 March 2003, defendant filed an answer denying the allegations of plaintiff's complaint. Both parties subsequently moved the trial court for summary judgment in their favor. On 29 March 2004, the trial court granted summary judgment in favor of defendant, concluding that defendant "provides no coverage and owes no duty to defend the claim against RGS Builders," and that plaintiff is entitled to recover nothing from defendant. Plaintiff appeals.

---

The issue on appeal is whether the trial court erred by granting summary judgment in favor of defendant. Plaintiff argues that defendant was required to extend coverage to RGS because the Desais discovered the damage to their residence while defendant was insuring RGS. We disagree.

When reviewing a motion for summary judgment, this Court considers whether "(1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784, 534 S.E.2d 660, 664, *disc. review denied and appeal dismissed*, 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied*, 534 U.S. 950, 151 L. Ed. 2d 261 (2001); *see* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003).

In *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 524 S.E.2d 558 (2000), our Supreme Court overruled this Court's opinion in *West American Insurance Co. v. Tufco Flooring East*, which held that "for insurance purposes, property damage 'occurs' when it is manifested or discovered." 104 N.C. App. 312, 317, 409 S.E.2d 692, 695 (1991). In *Gaston County*, the Court concluded that, for the purposes of determining insurance liability, there is no

"bright-line rule" that property damage occurs at the time of manifestation or upon the date of discovery. 351 N.C. at 303, 524 S.E.2d at 565. Instead, the Court held, "where the date of the injury-in-fact can be known with certainty, the insurance policy or policies on the risk on that date are triggered." *Id.* at 303, 524 S.E.2d at 564. Following *Gaston County*, this Court has held that if we "can determine when the injury-in-fact occurred, the insurance policy available at the time of the injury controls." *Hutchinson v. Nationwide Mut. Fire Ins. Co.*, 163 N.C. App. 601, 604, 594 S.E.2d 61, 63 (2004). Therefore, "even in situations where damage continues over time, if the court can determine when the defect occurred from which all subsequent damages flow, the court must use the date of the defect and trigger the coverage applicable on that date." *Id.* at 605, 594 S.E.2d at 64.

In *Hutchinson*, the plaintiffs sought damages arising from the continual entry of water into a retaining wall built by the contractor. The plaintiffs argued that, as the contractor's current insurer, the defendant was responsible for damages which, although resulting from the negligent construction of the wall, were discovered after the wall's construction and while the defendant's policy was in effect. The defendant denied coverage for the claim, contending that because the alleged negligent construction occurred while the defendant was not insuring the contractor, the defendant's insurance policy was not triggered. The trial court agreed with the defendant and granted summary judgment in its favor. On appeal, we agreed with the plaintiffs' theory of the injury, but we noted that "the evidence is clear that the damage to [the] plaintiffs' retaining wall occurred outside of the period in which [the] defendant insured [the contractor]." *Id.* at 605, 594 S.E.2d at 64. Accordingly, we held that "[w]ithout any additional information suggesting that the damage was caused during the three days of coverage prior to discovery, we affirm the trial court's order granting summary judgment to defendant." *Id.* at 605-06, 594 S.E.2d at 64.

In the instant case, the Desais' damages arose from the continual entry of moisture into their residence through the synthetic stucco. Plaintiff contends that the source of the property damage, RGS's negligent installation of the synthetic stucco, was not "determined with certainty" until 5 May 2000, the date in which McClancy Engineers provided its report to the Desais. Thus, plaintiff asserts, because RGS was insured by defendant on the date of discovery, defendant was required to extend general commercial liability coverage to RGS and to defend the suit. We cannot agree.

We note that defendant's insurance policy with RGS contains the following pertinent provisions:

A. COVERAGES

    1. Business Liability

        a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" [or] "property damage" . . . to which this insurance applies.

        . . . .

        b. This insurance applies:

           (1) To "bodily injury" and "property damage" only if:

           . . . .

           (b) The "bodily injury" or "property damage" occurs during the policy period.

Thus, as in *Hutchinson*, "[u]nder the insurance policy in this case, coverage is triggered by 'property damage' when the property damage is caused by an 'occurrence' and when the property damage occurs within the policy period." *Id.* at 604, 594 S.E.2d at 63. Accordingly, "[t]he issue for this Court to determine is whether the property damage occurred within the policy period." *Id.*

The record in the instant case establishes that defendant was not insuring RGS on the dates the Desais' residence was constructed, nor was defendant insuring RGS on the dates RGS attempted to repair its previous construction efforts. RGS began construction of the residence in 1993 and completed it in 1994. The repairs took place following Prime South's inspection of the residence in 1996. Defendant's policy with RGS began on 1 May 1997, and it was effective until 1 January 2003. In its 5 May 2000 report, McClancy Engineers specifically found that the "overall installation" of the synthetic stucco was defective. The Desais' complaint against RGS alleged that, as a result of Prime South's inspection, in May 1996, RGS, "by and through agents or employees, investigated, performed repairs, and told [the Desais] that the source of the water intrusion had been corrected." The Desais further alleged in their complaint that, when the repairs were later inspected in May 1997, they discovered that "the repair efforts undertaken by or on behalf of [RGS] in 1996 were inadequate and . . . failed to correct the problem, and from said inspection, [the

Desais] discovered the existence of a latent defect associated with the manner in which the property was constructed" by RGS. In light of the foregoing, it is clear that the Desais' property damage was caused by RGS's actions or inactions prior to the effective date of its policy with defendant. Therefore, without any additional information suggesting that the damage was caused during the dates of its coverage, we conclude that defendant bears no general commercial liability for the damages caused to the Desais by RGS.

Plaintiff argues in the alternative that defendant had a general duty to defend the suit against RGS by virtue of the terms of its insurance policy. Plaintiff asserts that the facts of the Desais' pleadings triggered defendant's contractual duty to defend. We disagree.

"The duty of an insurer to defend its insured is based on the coverage contracted for in the insurance policy." *Mastrom, Inc. v. Continental Casualty Co.*, 78 N.C. App. 483, 484, 337 S.E.2d 162, 163 (1985). "An insurer has a duty to defend when the pleadings state facts demonstrating that the alleged injury is covered by the policy." *Bruce-Terminex Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 735, 504 S.E.2d 574, 578 (1998). "Provisions of insurance policies are generally to be construed in favor of coverage and against the insurer. This principle applies, however, only when the terms of the policy are ambiguous." *Mastrom*, 78 N.C. App. at 484, 337 S.E.2d at 163 (citations omitted).

In *Waste Management of the Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986), our Supreme Court distinguished an insurer's duty to indemnify an insured from its duty to defend an insured as follows:

> Generally speaking, the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy. An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial. When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.

HARLEYSVILLE MUT. INS. CO. v. BERKLEY INS. CO. OF THE CAROLINAS

[169 N.C. App. 556 (2005)]

> Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage, or within a policy exception to coverage. In this event, the insurer's refusal to defend is at his own peril: if the evidence subsequently presented at trial reveals that the events are covered, the insurer will be responsible for the cost of the defense.

(citations and footnote omitted).

In the instant case, defendant's insurance policy with RGS provides that defendant "will have the right and duty to defend any 'suit' seeking those damages" to which the policy applies. As discussed above, under the terms of the insurance policy, defendant's coverage is triggered by "property damage" only when the " 'property damage' occurs during the policy period." The Desais' complaint against RGS alleged that the synthetic stucco was "improperly installed," that RGS "failed to adequately supervise the activities of their subcontractors" during the installation of the synthetic stucco, and that RGS "failed to promptly discover the improper method" by which the synthetic stucco was installed. The Desais' complaint referenced RGS's initial acts in constructing their residence as well as RGS's repairs and assurances following the May 1996 inspection. The complaint alleged no actions or inactions by RGS following 1 May 1997, the effective date of defendant's policy with RGS. Therefore, in light of the foregoing, we conclude that defendant did not have a general duty under its policy to defend RGS from the Desais' suit.

Plaintiff maintains that RGS was provided coverage by defendant by virtue of the "Contractors Extension Endorsement" provision contained within its insurance policy. However, we note that although the "Contractors Extension Endorsement" provides that defendant will pay those sums "to which this insurance applies" and also places upon defendant a "duty to defend any suit seeking these damages[,]" the endorsement expressly states that defendant has "no duty to defend suits for damages not covered by th[e] policy." The endorsement further provides that

> [n]egligent acts, errors, omissions or defects occurring prior to the effective date of the first consecutive errors and omissions policy . . . are excluded if there is other insurance applicable or if the "insured" knew or could have reasonably foreseen that such act, error, omission or defect might be the basis of a claim or suit.

In the instant case, as discussed above, RGS's insurance policy with defendant was effective on 1 May 1997. Prior to that date, RGS had an insurance policy with plaintiff. The Desais' complaint contained allegations of acts and omissions occurring prior to the effective date of RGS's insurance policy with defendant and during RGS's insurance policy with plaintiff. Thus, we conclude that the alleged negligent acts or omissions in the instant case were not covered by the "Contractors Extension Endorsement" in RGS's insurance policy with defendant, and therefore, the "Contractors Extension Endorsement" did not require defendant to defend RGS against the Desais' suit.

In light of the foregoing conclusions, we hold that the trial court did not err in ordering summary judgment in favor of defendant. Accordingly, we affirm the trial court's order.

Affirmed.

Judges CALABRIA and GEER concur.