**ERIE INS. EXCH. v. BUILDERS MUT. INS. CO.**

[227 N.C. App. 238 (2013)]

ERIE INSURANCE EXCHANGE, ERIE INDEMNITY COMPANY, AND TERRENCE P. DUFFY BUILDER, INC., PLAINTIFFS
v.
BUILDERS MUTUAL INSURANCE COMPANY, DEFENDANT

No. COA12-1104

Filed 21 May 2013

1. **Civil Procedure—judgment on the pleadings—consideration of contract—consideration of briefs—summary judgment**

    The trial court's consideration of defendant's insurance policy and the legal briefs submitted by the parties did not convert plaintiff's Rule 12(c) motion for judgment on the pleadings into a Rule 56 motion of summary judgment. Therefore, the trial court did not err in making a determination on the pleadings without allowing defendant the opportunity to present additional materials.

2. **Insurance—duty to defend—unjustifiable refusal—judgment on the pleadings**

    The trial court properly granted judgment on the pleadings in favor of plaintiffs in a declaratory judgment action. As a matter of law, the allegations presented in the underlying action triggered defendant's duty to defend its insured under the terms of defendant's insurance policy. Because defendant unjustifiably refused to defend its insured in the underlying action, judgment on the pleadings in favor of plaintiffs for the amount expended in settlement of the underlying action on behalf of the insured was proper. However, plaintiffs' amended complaint failed to include allegations pertaining to any "defense costs" expended, and therefore, judgment on the pleadings in favor of plaintiffs for any such defense costs was improper.

Appeal by defendant from orders entered 7 June 2012 and 6 July 2012 by Judge Laura J. Bridges in Rutherford County Superior Court. Heard in the Court of Appeals 26 February 2013.

*Martineau King, PLLC, by Elizabeth A. Martineau and Guiselle F. Mahon, for plaintiff appellees.*

*Nelson Levine de Luca & Hamilton, L.L.C., by John I. Malone, Jr. and David Harris, for defendant appellant.*

McCULLOUGH, Judge.

ERIE INS. EXCH. v. BUILDERS MUT. INS. CO.

[227 N.C. App. 238 (2013)]

Builders Mutual Insurance Company ("Builders Mutual" or "defendant") appeals from an order of the trial court entering judgment on the pleadings in favor of Erie Insurance Exchange, Erie Indemnity Company (collectively, "Erie"), and Terrence P. Duffy Builder, Inc. ("TPD Builder," collectively with Erie, "plaintiffs"). Defendant further appeals from an order of the trial court denying its motion to alter, amend, or vacate the order granting judgment on the pleadings in favor of plaintiffs. Because we conclude defendant's refusal to defend TPD Builder and Terrence P. Duffy ("Duffy") in the underlying action was unjustified, we affirm that portion of the trial court's order granting judgment on the pleadings in favor of plaintiffs for the amount expended in settlement of the underlying action. We reverse that portion of the trial court's order granting judgment on the pleadings in favor of plaintiffs for any "defense costs," as such costs are not supported by the pleadings.

## I. Background

On 18 August 2006, TPD Builder, a licensed North Carolina general contractor, contracted to build a new single family residence for R. Michael Hardison and his wife, Sara E. Hardison (the "Hardisons"). In connection with the construction project, TPD Builder subcontracted the excavation of the building site and the stabilization of cut slopes above the residence to Wilbur Mosseller ("Mosseller") of Mosseller Construction, LLC ("Mosseller Construction") and Paul Lytle ("Lytle"). TPD Builder and its principal owner/officer Duffy, were insured under a commercial general liability insurance policy issued by Erie for the period of 7 May 2006 through 7 May 2009. TPD Builder and Duffy were then insured under a commercial general liability insurance policy issued by defendant for the period of 6 May 2009 through 6 May 2010.

On 21 September 2007, the construction of the Hardisons' residence was substantially completed and a certificate of occupancy was issued. Thereafter, on 7 December 2009, the altered slope and retaining wall above the Hardisons' residence collapsed causing extensive damage to the residence and the Hardisons' personal property.

On 23 June 2010, the Hardisons filed an action against TPD Builder; Duffy and his wife, Lisa C. Duffy, individually; Mosseller Construction; and Mosseller and Lytle, individually (the "Hardison Action"). Erie agreed to defend TPD Builder and Duffy in the Hardison Action under a reservation of rights. Defendant refused to defend TPD Builder and Duffy in the Hardison Action.

On 21 December 2011, Erie filed a complaint against defendant; TPD Builder; Duffy and his wife, individually; and R. Michael Hardison,

seeking a declaratory judgment addressing the rights and obligations of Erie and defendant under their respective insurance policies issued to TPD Builder and Duffy for the claims raised in the Hardison Action. On 7 March 2012, defendant filed a motion to dismiss, motion for judgment on the pleadings, and answer. Defendant renewed its motion for judgment on the pleadings on 25 April 2012, and on 3 May 2012, defendant filed a brief in support of its motion for judgment on the pleadings. Defendant's motion for judgment on the pleadings was noticed for hearing on 8 May 2012.

On 30 April 2012, Erie filed a motion for leave to amend its complaint for declaratory judgment. Specifically, as reflected in its proposed complaint, Erie sought to add TPD Builder as a plaintiff and to include allegations reflecting the fact that a settlement agreement had been reached in the Hardison Action under which Erie agreed to pay to the Hardisons the sum of $170,000.00 on behalf of TPD Builder and Duffy. Erie's motion was also noticed for hearing on 8 May 2012. On 7 May 2012, Erie voluntarily dismissed TPD Builder, Duffy and his wife, and R. Michael Hardison from the present declaratory judgment action.

At the 8 May 2012 motions hearing, the trial court allowed Erie's motion to amend its complaint.[1] After allowing Erie's motion to amend its complaint, the trial court inquired as to whether defendant desired to proceed on its motion for judgment on the pleadings as to the amended complaint. Defendant agreed to proceed, stipulating that the trial court could consider defendant's answer to the original complaint in conjunction with the amended complaint for purposes of defendant's motion for judgment on the pleadings. Plaintiffs likewise agreed to proceed based upon the trial court's consideration of their amended complaint and defendant's answer to the original complaint. All parties agreed at the hearing that the amended complaint had no effect on defendant's assertion that it was entitled to judgment on the pleadings on the issue of whether it had a duty to defend and/or indemnify TPD Builder and Duffy in connection with the Hardison Action. During the course of the hearing, plaintiffs also made an oral motion for judgment on the pleadings.[2] Following the hearing, the trial court determined that judgment on the pleadings in favor of plaintiffs was proper, and on 7 June 2012, the trial court entered a written order denying defendant's motion for

---

1. A written order allowing plaintiffs' proposed amended complaint was entered 11 May 2012.

2. To the extent defendant asserts in its reply brief that plaintiffs' oral motion for judgment on the pleadings was improper because the pleadings had not been closed and because it had no notice of plaintiffs' motion, we note that the hearing at which plaintiffs

judgment on the pleadings and entering judgment on the pleadings in favor of plaintiffs.

On 12 June 2012, defendant filed a motion to alter, amend, or vacate the trial court's 7 June 2012 order. In support of its motion, defendant attached multiple documents, including an affidavit of Carl Warbington, defendant's claims manager. The trial court held a hearing on defendant's motion on 26 June 2012, after which the trial court orally denied defendant's motion. The trial court entered a written order denying defendant's motion on 6 July 2012.

On 2 July 2012, defendant gave timely written notice of appeal from the trial court's 7 June 2012 order entering judgment on the pleadings in favor of plaintiffs, and on 20 July 2012, defendant gave timely written notice of appeal from the trial court's 6 July 2012 order denying its motion to alter, amend, or vacate the order granting judgment on the pleadings in favor of plaintiffs.

## II.  Standard of Review

A motion for judgment on the pleadings is governed under Rule 12(c) of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 12(c) (2011). "Judgment on the pleadings, pursuant to Rule 12(c), is appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Shehan v. Gaston Cty.*, 190 N.C. App. 803, 806, 661 S.E.2d 300, 303 (2008) (internal quotation marks and citation omitted). This Court reviews a trial court's order granting a motion for judgment on the pleadings *de novo. Reese v. Mecklenburg Cnty.*, 204 N.C. App. 410, 421, 694 S.E.2d 453, 461 (2010).

## III.  Conversion of Rule 12(c) Motion into Rule 56 Motion

We first address defendant's argument that the trial court erred in considering both the terms of defendant's insurance policy and the legal briefs submitted by the parties in making its Rule 12(c) determination. As to the insurance policy, defendant argues that plaintiffs neither attached nor incorporated defendant's insurance policy within their original or amended complaint, thereby precluding the trial court from considering it under Rule 12(c). Defendant further argues that the legal

---

orally moved for judgment on the pleadings was calendared to address defendant's own motion for judgment on the pleadings concerning the exact same issue for which plaintiffs orally moved for judgment on the pleadings. Thus, defendant can hardly complain on appeal that the trial court could not properly consider plaintiffs' motion for judgment on the pleadings at the same hearing and on the same issue as that presented in defendant's own motion for judgment on the pleadings.

briefs submitted by the parties constituted matters outside the pleadings. Defendant contends that the trial court's consideration of these materials converted plaintiffs' Rule 12(c) motion into a Rule 56 motion for summary judgment. Defendant argues that the trial court violated the provisions of Rule 12(c) by making a determination without allowing defendant the opportunity to present additional materials pertinent to a Rule 56 determination.

The relevant provision of Rule 12(c) provides:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

N.C. Gen. Stat. § 1A-1, Rule 12(c). Defendant is correct that "[i]n deciding a motion for judgment on the pleadings, the trial court looks solely to the pleadings and may only consider facts that have been properly pled and documents attached to or referred to in the pleadings." *Reese*, 204 N.C. App. at 421, 694 S.E.2d at 461 (citation omitted).

However, this Court has previously held that where the trial court considers the terms of a contract that is both the subject of the action and specifically referenced in the complaint, a dispositive motion under Rule 12 is not thereby converted into a Rule 56 motion for summary judgment. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60-61, 554 S.E.2d 840, 847 (2001); *Coley v. N.C. Nat'l Bank*, 41 N.C. App. 121, 126-27, 254 S.E.2d 217, 220 (1979).[3] Notably, in *Coley*, this Court expressed that "[t]he obvious purpose" of the above quoted provision, contained in both Rule 12(b)(6) and Rule 12(c), "is to preclude any unfairness resulting from surprise when an adversary introduces extraneous material" on a dispositive motion under Rule 12, "and to allow a party a reasonable

---

3. Although the holdings in *Oberlin Capital* and *Coley* address the trial court's ruling on a Rule 12(b)(6) motion, the language at issue under Rule 12(b)(6) in those cases is identical to the language at issue in the present case under Rule 12(c). Rule 12(b) provides that a motion to dismiss for failure to state a claim under Rule 12(b)(6) "shall be treated as one for summary judgment and disposed of as provided in Rule 56" where "matters outside the pleadings are presented to and not excluded by the court" in ruling on the motion. N.C. Gen. Stat. § 1A-1, Rule 12(b) (2011); *see also Data Gen. Corp. v. Cty. of Durham*, 143 N.C. App. 97, 102, 545 S.E.2d 243, 247 (2001). Rule 12(c) contains an identical provision, stating that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." N.C. Gen. Stat. § 1A-1, Rule 12(c).

time in which to produce materials to rebut an opponent's evidence once the motion is expanded to include matters beyond those contained in the pleadings." *Coley*, 41 N.C. App. at 126, 254 S.E.2d at 220. Accordingly, "a trial court's consideration of a contract which is the subject matter of an action does not expand the scope of a Rule 12(b)(6) [or Rule 12(c)] hearing and does not create justifiable surprise in the nonmoving party." *Oberlin Capital*, 147 N.C. App. at 60, 554 S.E.2d at 847.

Here, defendant complains that the trial court improperly considered the terms of its insurance policy in ruling on plaintiffs' Rule 12(c) motion. However, defendant's insurance policy was specifically referenced in plaintiffs' amended complaint. Paragraph nine of plaintiffs' amended complaint states:

> Upon information and belief, Builders Mutual issued a Commercial Package Policy, no[.] CPP 0035392 00 to Plaintiff TPD Builder Inc., and said Builders Mutual policy had a policy period of May 6, 2009 through May 6, 2010.

In its answer, defendant expressly admitted issuing this insurance policy to TPD Builder. In addition, defendant included the relevant terms of its insurance policy within its brief to the trial court in support of its own motion for judgment on the pleadings. Plaintiffs' declaratory judgment action sought a declaration of the rights and obligations of the parties pursuant to their respective insurance policies, and therefore, defendant's insurance policy was the subject of plaintiffs' action. Accordingly, by considering the terms of defendant's insurance policy, the trial court "did not expand the hearing to include any new or different matters." *Coley*, 41 N.C. App. at 126, 254 S.E.2d at 220. Thus, the trial court's consideration of defendant's insurance policy in making its Rule 12(c) determination was proper and did not convert plaintiffs' Rule 12(c) motion into a Rule 56 motion for summary judgment.

Likewise, this Court has previously held that "[m]emoranda of points and authorities as well as briefs and oral arguments . . . are not considered matters outside the pleadings for purposes of converting a Rule 12 motion into a Rule 56 motion." *Privette v. University of North Carolina*, 96 N.C. App. 124, 132, 385 S.E.2d 185, 189 (1989) (ellipsis in original) (internal quotation marks and citation omitted); *see also Davis v. Durham Mental Health/Dev. Disabilities Area Auth.*, 165 N.C. App. 100, 104, 598 S.E.2d 237, 240 (2004).

Having reviewed the briefs submitted by the parties at the hearing below, we agree with plaintiffs that the briefs are simply memoranda

of points and authorities and contain no factual allegations outside of those presented in the complaint. Thus, the trial court's consideration of the parties' briefs in the present case did not convert plaintiffs' Rule 12(c) motion into a Rule 56 motion for summary judgment. Because the trial court's consideration of both defendant's insurance policy and the legal briefs submitted by the parties did not convert the Rule 12(c) hearing into a Rule 56 hearing, the trial court did not err in making a determination on the pleadings without allowing defendant the opportunity to present additional materials. Defendant's argument on this issue is without merit.

### IV. Judgment on the Pleadings

[2] We next address defendant's argument that the trial court erred in entering judgment on the pleadings in favor of plaintiffs. Defendant contends that the trial court erred in entering judgment on the pleadings in favor of plaintiffs because (1) plaintiffs' action required the trial court to determine "when the defect occurred from which all damages flowed" – an issue of fact – in order to determine which insurance policy was triggered, and (2) plaintiffs' claim for reimbursement of legal expenses pled alternative remedies and did not plead certain facts necessary for a determination of that issue, thereby making plaintiffs' claim an improper subject for a Rule 12(c) ruling. To the contrary, plaintiffs argue that their action required the trial court to determine whether defendant breached its duty to defend TPD Builder and Duffy in the Hardison Action. Plaintiffs contend the pleadings clearly show that defendant had a duty to defend TPD Builder and Duffy in the Hardison Action, thereby making defendant liable for the legal costs incurred by Erie in defending TPD Builder and Duffy and in settling the Hardison Action.

The issue of whether defendant's insurance policy required defendant to defend TPD Builder and Duffy in the Hardison Action is determined by interpreting the language of the policy. "The construction and interpretation of provisions in an insurance contract is a question of law." *Kessler v. Shimp*, 181 N.C. App. 753, 756, 640 S.E.2d 822, 824 (2007). Accordingly, the question of defendant's duty to defend may be resolved by judgment on the pleadings.

In determining whether alleged circumstances are covered by the provisions of an insurance policy under North Carolina law such that they give rise to a duty to defend, our Courts utilize the "comparison test." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 693, 340 S.E.2d 374, 378 (1986). In utilizing the comparison test, "the pleadings are read side-by-side with the policy to determine

whether the events as alleged are covered or excluded." *Id.* "The insurer's duty to defend is determined by the pleadings in the underlying lawsuit. The duty to defend exists if the events alleged in the pleadings are covered under the terms of the policy, and any doubt as to coverage must be resolved in favor of the insured." *Duke University v. St. Paul Fire and Marine Ins. Co.*, 96 N.C. App. 635, 637, 386 S.E.2d 762, 763-64 (1990) (citation omitted).

"The duty to defend is broad and is independent of the duty to pay." *Builders Mut. Ins. Co. v. Mitchell*, 210 N.C. App. 657, 665, 709 S.E.2d 528, 534 (2011). "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Waste Management*, 315 N.C. at 691, 340 S.E.2d at 377. "There is a duty to defend '[w]here the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy.' This is true even where the facts appear to be outside coverage or within a policy exception." *Mitchell*, 210 N.C. App. at 666, 709 S.E.2d at 535 (quoting *Waste Management*, 315 N.C. at 691–92, 340 S.E.2d at 377–78). "If the claim is within the coverage of the policy, the insurer's refusal to defend is unjustified even if it is based upon an honest but mistaken belief that the claim is not covered." *Duke University*, 96 N.C. App. at 637, 386 S.E.2d at 764.

Under the terms of defendant's commercial general liability insurance policy in the present case, coverage is triggered by "property damage" when the property damage is caused by an "occurrence" and when the property damage "occurs during the policy period." "Property Damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it[.]" Further, an "occurrence" is defined in defendant's insurance policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

"An 'occurrence' as defined by a [commercial general liability] policy can be an accident caused by or resulting from faulty workmanship including damage to any property other than the work product." *Mitchell*, 210 N.C. App. at 661, 709 S.E.2d at 532 (internal quotation marks, citation, and emphasis omitted). "An accident is generally considered to be an unplanned and unforeseen happening or event, usually with unfortunate consequences." *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 302, 524 S.E.2d 558, 564 (2000). Whether events are accidental and constitute an occurrence depends

upon whether they were "unexpected and unintended" from the point of view of the insured. *Waste Management*, 315 N.C. at 695, 340 S.E.2d at 379. "The fact that the accident may have arisen from [the insured's] negligence does not prohibit coverage." *Mitchell*, 210 N.C. App. at 663, 709 S.E.2d at 533.

In *Gaston County Dyeing*, 351 N.C. 293, 524 S.E.2d 558, our Supreme Court examined an insurance policy that contained identical provisions. *See id.* at 300-01, 524 S.E.2d at 563-64. In *Gaston County Dyeing*, the underlying complaint alleged defects in the design and manufacture of pressure vessels that were fabricated by Gaston County Dyeing Machine Company ("Gaston") and ultimately sold through a distributor to Sterling Pharmaceuticals, Inc. ("Sterling") for use in production of contrast media dyes for diagnostic medical imaging. *Id.* at 295, 524 S.E.2d at 560. On 21 June 1992, a pressure vessel ruptured causing a leakage and subsequent contamination of Sterling's contrast media dye, which was thereafter discovered on 31 August 1992. *Id.* at 302, 524 S.E.2d at 564. As in the present case, coverage under the competing insurance policies at issue in *Gaston County Dyeing* was triggered by " 'property damage' when the property damage [was] caused by an 'occurrence' and when the property damage occur[red] during the policy period." *Id.* Our Supreme Court concluded that "[t]he sudden, unexpected leakage from the pressure vessel, causing release of a contaminant into Sterling's dye product," constituted an occurrence under the plain language of the insurance policies. *Id.* In addition, our Supreme Court noted the undisputed fact that the rupture of the pressure vessel occurred on 21 June 1992, thereby causing the property damage to the dye product, despite the fact that the contamination continued until it was subsequently discovered. *Id.*

Here, the allegations of the complaint in the Hardison Action state that the damage to the Hardisons' residence and personal property occurred when the altered slope and retaining wall collapsed on 7 December 2009. Specifically, paragraphs twenty-five and twenty-six of the Hardison Action complaint state:

> 25. On the evening of December 7, 2009, the plaintiffs were inside the Residence when the altered slope and retaining wall collapsed, sending tons of dirt and rock onto the Residence, causing extensive damage to the Residence, the plaintiffs' personal property, and land upon which the residence was constructed. . . .

> 26. After the slope collapse of December 7, 2009, the Hardison Residence was condemned by the Buncombe

County Building Inspections Department. The plaintiffs
are legally prohibited from occupying their home. After
the occurrence they took shelter with relatives until they
could rent an apartment. Their home is presently unin-
habitable and worthless.

Pursuant to these allegations in the Hardison Action complaint, the
physical injury to the Hardisons' property occurred during defendant's
policy period of 6 May 2009 through 6 May 2010.

Further, although the Hardison Action complaint alleges that the
bank collapse was a result of TPD Builder's negligent construction
and faulty workmanship, there is no indication in the record that the
destructive bank collapse was "expected or intended" by TPD Builder.
Rather, the collapse of the altered slope and retaining wall was an acci-
dent resulting from the alleged faulty workmanship of TPD Builder
according to the allegations in the Hardison Action complaint. Although
the Hardison Action complaint does not contain any allegations that
TPD Builder "engaged in some act or omission after the house was com-
pleted," as defendant maintains on appeal, the lack of such an allegation
is immaterial. "Faulty workmanship is not included in the standard defi-
nition of 'property damage,' " and defendant's insurance policy requires
only that the property damage occur during the policy period. *Mitchell*,
210 N.C. App. at 661, 709 S.E.2d at 532. Here, the property damage to
the Hardisons' residence and personal property was caused by a single
occurrence – the collapse of the altered slope and retaining wall – as
defined in defendant's insurance policy. Based on a comparison test of
the Hardison Action complaint and defendant's insurance policy, and
following our Supreme Court's analysis and holding in *Gaston County
Dyeing*, defendant's duty to defend TPD Builder and Duffy in the
Hardison Action was clearly triggered.

Nonetheless, defendant maintains on appeal that under circum-
stances like those presented in the present case, the trial court must
determine "when the *defect* occurred from which all damages flowed,"
rather than the date the harm manifested, in order to determine
which insurance policy is triggered. (Emphasis added.) In support of
its argument, defendant relies on this Court's opinion in *Hutchinson
v. Nationwide Mut. Fire Ins. Co.*, 163 N.C. App. 601, 594 S.E.2d 61
(2004). However, defendant's argument and reliance on *Hutchinson* is
misguided, as the language relied on by defendant as this Court's holding
in *Hutchinson* is actually a summary of our Supreme Court's holding in
*Gaston County Dyeing*.

The pertinent terms of the insurance policy at issue in *Hutchinson* were substantively identical to those involved in both the present case and *Gaston County Dyeing*: "Under the insurance policy in [*Hutchinson*], coverage [was] triggered by 'property damage' when the property damage [was] caused by an 'occurrence' and when the property damage occur[red] within the policy period." *Id.* at 604, 594 S.E.2d at 63. In *Hutchinson*, Dennis and Leanne Hutchinson ("the Hutchinsons") contracted with a builder for the construction of a custom home, "includ[ing] the creation of a retaining wall[.]" *Id.* at 602, 594 S.E.2d at 62. On 18 November 2009, the Hutchinsons discovered that the retaining wall had been damaged by water entry, and the Hutchinsons filed suit against the builder. *Id.* at 602, 605, 594 S.E.2d at 62, 64. This Court observed that the Hutchinsons' underlying complaint advanced two theories of liability against the builder of the retaining wall: "The property damage herein was allegedly caused by either (1) [the builder]'s failure to install a drainage system in the retaining wall and/or to use proper soil under the retaining wall, or (2) the continual entry of water into the soil from the compacted surface area." *Id.* at 604, 594 S.E.2d at 63.

We further noted in *Hutchinson* that the uncontested facts revealed that "the building was complete before the end of October 1999 and that [the builder]'s new insurance policy was not available until 15 November 1999." *Id.* at 605, 594 S.E.2d at 63. Accordingly, we held: "This Court can determine with certainty that [the builder]'s failure to install a drainage system in the retaining wall or to use the proper soil under the retaining wall occurred before 15 November 1999 and therefore [the builder's] later insurance policy [was] not triggered if the damage was caused under those theories." *Id.* In addition, after noting that the Hutchinsons' "strongest argument [was] that [the builder] failed to construct any alternate means to protect the site and therefore allowed the continual entry of water into the soil under the retaining wall, creating significant damage to the retaining wall[,]" we observed that the evidence presented by the Hutchinsons clearly indicated that the builder's "actions and inactions at the time the retaining wall was constructed caused the subsequent problems with water entry into the soil surrounding the retaining wall." *Id.* at 605, 594 S.E.2d at 64. Summarizing our Supreme Court's holding in *Gaston County Dyeing*, we stated that "even in situations where damage continues over time, if the court can determine when the *defect* occurred from which all subsequent damages flow, the court must use the date of the *defect* and trigger the coverage applicable on that date." *Id.* (emphasis added). Thus, under the Hutchinsons' remaining theory that the property damage was caused by the "continual entry of water" that began at the time the home was constructed, we held

ERIE INS. EXCH. v. BUILDERS MUT. INS. CO.

[227 N.C. App. 238 (2013)]

that the builder's later insurance policy was not triggered. *Id.* at 605, 594 S.E.2d at 64. Accordingly, we upheld the trial court's grant of summary judgment in favor of the builder's insurance company, as nothing "suggest[ed] that the damage was caused during the three days of coverage prior to discovery[.]" *Id.* at 606, 594 S.E.2d at 64.

However, we note that to the extent *Hutchinson* uses the term "defect" in summarizing our Supreme Court's holding in *Gaston County Dyeing*, such language mischaracterizes the holding in *Gaston County Dyeing*, as our Supreme Court did not use the term "defect," but rather, "injury-in-fact." In *Gaston County Dyeing*, our Supreme Court held that "where the date of the *injury-in-fact* can be known with certainty, the insurance policy or policies on the risk on that date are triggered." *Gaston County Dyeing*, 351 N.C. at 303, 524 S.E.2d at 564 (emphasis added). Notably, in *Gaston County Dyeing*, had our Supreme Court looked to the date the "defect" occurred in the underlying action, *i.e.*, when the faulty pressure vessel was fabricated by Gaston, the holding would have been markedly different. However, in *Gaston County Dyeing*, our Supreme Court looked to when the defective product failed and caused the property damage complained of, consistent with the terms of the insurance policy at issue. *Id.* at 302, 524 S.E.2d at 564. To the extent the language employed in *Hutchinson* is inconsistent with that employed by our Supreme Court in *Gaston County Dyeing*, we follow our Supreme Court's holding and analysis.

Moreover, both *Gaston County Dyeing* and *Hutchinson* address factual situations in which property damage occurred over an extended period of time, although the condition causing such damage was not discovered until after substantial property damage had already occurred. *See Gaston County Dyeing*, 351 N.C. at 302, 524 S.E.2d at 564; *Hutchinson*, 163 N.C. App. at 605, 594 S.E.2d at 64. As reflected by the allegations of the Hardison Action complaint, this is not a case of property damage that continued over time.[4] Consequently, defendant's reliance on *Harleysville Mut. Ins. Co. v. Berkley Ins. Co. of the Carolinas*, 169 N.C. App. 556, 610 S.E.2d 215 (2005), and *Nelson v. Hartford Underwriters Ins. Co.*, 177 N.C. App. 595, 630 S.E.2d 221 (2006), is likewise misguided,

---

4. Although defendant argues in its reply brief that whether the property damage alleged in the Hardison Action was continual or progressive in nature was an issue of fact to be determined by the trial court, thereby preventing judgment on the pleadings, this argument is clearly unsupported by the allegations of the Hardison Action complaint, which definitively state that the damage to the Hardisons' residence and personal property occurred on the evening of 7 December 2009 when the altered slope and retaining wall collapsed.

as both of those cases also addressed factual situations in which property damage continued over time, beginning at the time of the faulty construction alleged in the underlying complaint. *See Harleysville*, 169 N.C. App. at 557-58, 560-62, 610 S.E.2d at 216-19 (underlying action by homeowners against contractor for property damage resulting from the continual entry of moisture through a synthetic stucco system that was defectively installed by the contractor on the outside of the homeowners' residence; property damage began occurring at the time of construction, which occurred prior to the effective date of the insurance company's general commercial liability policy covering the contractor); *Nelson*, 177 N.C. App. at 598-600, 607, 630 S.E.2d at 224-26, 230 (underlying action by homeowners against insurer for property damage consisting of mold contamination that was attributed to three causes, all of which occurred during construction or repairs prior to effective date of insurance coverage and continued over time until discovery during the coverage period). To the contrary, in the present case, according to the allegations of the Hardison Action complaint, TPD Builder and its subcontractors negligently altered the slope and constructed an inadequate retaining wall, and this faulty construction ultimately caused the slope collapse that resulted in the property damage to the Hardisons' property. Nonetheless, all property damage alleged in the Hardison Action relates to the single occurrence of the slope collapse that occurred during defendant's policy period.

We note this Court's recent opinion in *Builders Mut. Ins. Co. v. Mitchell*, 210 N.C. App. 657, 709 S.E.2d 528 (2011), in which we held that an insurer's duty to defend was triggered when the facts alleged in the underlying action, if true, would point to property damage as defined under the insured's policy. *Id.* at 666-67, 709 S.E.2d at 535. In *Mitchell*, the underlying action alleged that a homeowner had suffered damages to his home as a result of the faulty workmanship performed by the insured. *Id.* at 658-59, 666, 709 S.E.2d at 530, 535. Builders Mutual defended the insured in the underlying action and settled the claim following mediation. *Id.* at 659, 709 S.E.2d at 530-31. Thereafter, Builders Mutual filed a declaratory judgment action seeking indemnity from a previous insurer for a portion of the settlement and defense costs. *Id.* In *Mitchell*, we held that given the broad definition of the duty to defend in our case law, and based on the allegations of the underlying action, "[t]here was a duty to defend, which is independent of the duty to pay, and [the previous insurer] should have defended the underlying action."[5] *Id.* at 667, 709

---

5. We note that defendant's position in the present case is entirely contrary to and inconsistent with its position and argument in *Mitchell*.

S.E.2d at 535. Similarly, in the present case, the Hardison Action complaint alleged facts which could have brought the claim within defendant's insurance policy, thereby triggering defendant's duty to defend the underlying action.

In light of the foregoing authority, and having utilized the comparison test, we hold defendant's refusal to defend TPD Builder and Duffy in the Hardison Action was unjustified as a matter of law. If the insurer's refusal to defend the underlying action was unjustified, the insurer obligates itself "to pay the amount and costs of a reasonable settlement." *Duke University*, 96 N.C. App. at 637, 386 S.E.2d at 763. "If the insurer fails to defend, it is at his own peril: if the evidence subsequently presented at trial reveals that the events are covered, the insurer will be responsible for the cost of the defense." *Mitchell*, 210 N.C. App. at 666, 709 S.E.2d at 535 (internal quotation marks and citation omitted). Here, because defendant's refusal to defend was unjustified, defendant obligated itself to pay the amount expended in settlement of the Hardison Action on behalf of TPD Builder and Duffy.

In their amended complaint, plaintiffs requested the trial court issue a declaratory judgment that in breaching its duty to defend, defendant "must reimburse Plaintiffs for the entire defense costs" and "fully indemnify and reimburse Plaintiffs for the entire amount of the settlement sums." The amended complaint contains an allegation that Erie paid on behalf of TPD Builder and Duffy "the sum of $170,000.00" to settle the Hardison Action. Thus, the trial court's order granting judgment on the pleadings in favor of plaintiffs for the settlement sum of $170,000.00 was proper in light of defendant's unjustified refusal to defend its insured in the Hardison Action and is therefore affirmed.

However, neither the original complaint nor the amended complaint in the present action state any amount as plaintiffs' "defense costs." Although plaintiffs pled they were entitled to legal fees for defense costs, they failed to include any supporting allegations addressing these "defense costs." Accordingly, the trial court's order granting judgment on the pleadings in favor of plaintiffs cannot extend to defense costs that were insufficiently pled. To the extent plaintiffs seek "defense costs," the trial court's order granting judgment on the pleadings in favor of plaintiffs is therefore reversed.

### V. Conclusion

We hold the trial court did not err in considering the requisite terms of defendant's insurance policy as well as the legal briefs submitted by

the parties in making a determination on the pleadings pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure. The trial court's consideration of these documents did not convert the Rule 12(c) hearing into a Rule 56 hearing, and therefore, the trial court did not err in making its determination without allowing defendant the opportunity to present additional materials.

We further hold the trial court properly granted judgment on the pleadings in favor of plaintiffs in the present case. As a matter of law, the allegations presented in the underlying action triggered defendant's duty to defend its insured under the terms of defendant's insurance policy. Because defendant unjustifiably refused to defend its insured in the underlying action, judgment on the pleadings in favor of plaintiffs for the amount expended in settlement of the underlying action on behalf of the insured was proper. However, plaintiffs' amended complaint fails to include allegations pertaining to any "defense costs" expended, and therefore, judgment on the pleadings in favor of plaintiffs for any such defense costs was improper. Accordingly, we affirm in part and reverse in part the trial court's order granting judgment on the pleadings in favor of plaintiffs.

Affirmed in part and reversed in part.

Judges HUNTER (Robert C.) and DAVIS concur.