IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-677

No. COA21-588

Filed 18 October 2022

Wake County, No. 20 CVS 11158

NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC.,
Plaintiff,

v.

JOSHUA CARPENTER; ALL PRO BILLIARDS & SPAS, LLC; JAMES BANKS; KENNETH BARRETT; MARY BELUE AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DELMER EUGENE BELUE; SHANE BIDDIX; DOUGLAS C. BROWDER; JERRY BUCKNER; CHRISTOPHER A. CHURCHILL AS EXECUTOR OF ESTATE OF DAVID CHURCHILL; PAUL CLAUS; JAMES CLIMO, JR.; MEGAN CLIMO; JACK CLINARD; LOUIS ELDERS; KIMBERLY FERGUSON; ANNA FRANKS; WILLIAM GOOD; KIMBERLY GRANT; LINDA HARTLEY; CLIFTON HOYLE HELMS, JR.; CANDIA HIGGINS; ROGER HIGGINS; DAWSON HUNTER; EDWARD INGLE; MARILYN P. INGLE; ROBERT LAUGHTER; TINA LEDFORD; VICKI MCCARSON; VANESSA METCALF; SHELBY NIX; ANTHONY GLENN OWNBEY; WILLIAM PARKER; STEPHEN PARRIS; BRANDON PAYNE; MARCIA REITZ; ALBER RIOUX; MICHAEL ROGERS; ELIZABETH ROPER; JIMMY RUMFELT; MARVIN SCOTT; DELMAR SHERMAN; JOHN SHERMAN; ROSE SHETLEY; JAMIN SKIPPER; JUDY SMATHERS; JIMMY THOMAS; TERRI TOLLEY; RANDAL WEIS; HAROLD WOMICK; LINDA WOODY; PHYILLIS MARIE YOUNG; NORTH CAROLINA DEPARTMENT OF AGRICULTURE & CONSUMER SERVICES; STEPHEN BALDWIN; MAXINE CRAWFORD; JEREMY EDMONDS; JOHN GAVIN; VERONICA GRIER; ALBERT ISOM; JOHN LYDA; TIMOTHY MCFALLS; DEBORAH PARHAM; MICHAEL PETREY; SHARON SMITH; BRETT TEMPLE; RONAL MONSON; PEGGY DUNCAN; DENICE WILLIAMS; CRYSTAL HOLDER; RANDY HOUSTON; JAMES CLOW; MAYLON ARRINGTON; DARELL DOUGLAS CABLE; and NATHAN DREW WALKER,
Defendants.

Appeal by Plaintiff from order entered 9 June 2021 by Judge George Collins in

Wake County Superior Court.  Heard in the Court of Appeals on 26 April 2022 in

session at Elon University School of Law in the City of Greensboro pursuant to N.C. Gen. Stat. § 7A-19(a).

*Young Moore and Henderson, P.A., by Walter E. Brock, Jr., David W. Early, and William F. Lipscomb, for plaintiff-appellant.*

*Patterson Harkavy LLP, by Christopher A. Brook and Narendra K. Ghosh, for defendants-appellees.*

*Barbour, Searson, Jones & Cash, PLLC, by W. Bradford Searson, for Joshua Carpenter and All Pro Billiards & Spa, LLC, defendants-appellees.*

WOOD, Judge.

¶ 1    Plaintiff appeals from an order entered by the trial court denying its motion for judgment on the pleadings.  The trial court concluded Plaintiff has a duty under an insurance policy it issued to defend certain underlying claims and stayed this action pending additional determinations relevant to the scope of any duty of Plaintiffs to indemnify for losses under its insurance policy.  On appeal, Plaintiff argues 1) its Fungi or Bacteria Exclusion bars the underlying claims; 2) Defendant Joshua Carpenter ("Defendant Carpenter") and Defendant All Pro Billiards & Spas, LLC's ("Defendant All Pro") hot tubs were intended for display, and thus its Consumption Exception does not apply; and 3) it does not have a duty to indemnify Defendant Carpenter or Defendant All Pro.  After a careful review of the record and applicable law, we affirm the order of the trial court.

## I. Factual and Procedural Background

Plaintiff is an insurance company organized under the laws of North Carolina and whose principal place of business is also North Carolina. Plaintiff issued a Commercial General Liability Policy (the "Policy") to Defendant Carpenter for the period of May 16, 2019, to May 16, 2020. This Policy had a per occurrence limit of $1,000,000.00 for Defendant Carpenter's business, All Pro, of which he is a co-owner. North Carolina Mountain State Fair is also named as an additional insured.

From September 6 to 15, 2019, the Western North Carolina Mountain State Fair was held at the North Carolina Agricultural Center. Thereat, various attractions and exhibits were displayed at the Davis Center. Defendant All Pro displayed hot tubs actively circulating water in the Davis Event Center.

Shortly after the fair concluded, the Buncombe County Department of Health and Human Services and Henderson County Health Department notified the North Carolina Division of Public Health ("NCDPH") that there had been an increase in cases of Legionnaires' disease on September 23, 2019.[1] All reported cases of Legionnaires' disease were connected to the North Carolina Mountain State Fair. The same day, the NCDPH, along with other health agencies, initiated an

---

[1] Legionnaires' disease is a serious form of legionellosis, an infection caused by the microorganism *Legionella*. "Legionellosis is caused by inhaling airborne droplets of water containing *Legionella*."

epidemiological and microbiological investigation to determine the source of the Legionnaires' disease. The NCDPH created a comprehensive list of aerosolized water sources at the fair which may have caused the outbreak of Legionnaires' disease. The NCDPH identified Defendants All Pro and Carpenter's hot tubs as possible sources of aerosolized water.

From September 25 to 27, 2019, the NCDPH collected twenty-seven water and environmental samples from the fair. The NCDPH's epidemiological investigation revealed,

> individuals who were sickened at the [f]air were twelve times more likely to have visited the Davis Event Center; twenty-three times more likely to report spending more than an hour in the Davis Event Center; more than nine times more likely to report walking by or spending time by the hot tubs; and more than thirty-six times more likely to have attended the [f]air during the last five days of the [f]air (September 11 to September 15, 2019).

Ultimately, the NCDPH concluded "that this outbreak most likely resulted from exposure to *Legionella* bacteria in aerosolized water from hot tubs on display in the Davis Event Center at the fair." The NDCPH was unable to obtain complete maintenance records for the hot tubs; as such, it was "impossible to determine if the chemicals in the hot tubs were adequate to prevent bacterial growth for the duration of the fair." As a result of the outbreak of Legionnaires' disease at the fair, one hundred and thirty-five cases of the disease were reported, ninety-six individuals

were hospitalized, and four individuals died.

¶ 6    Thereafter, eleven separate lawsuits were filed against, *inter alai*, Defendants All Pro and Carpenter between September 15, 2019 and February 16, 2021. Additionally, one suit was filed against only Defendant All Pro.[2]  Most of the claimants in these suits visited the Davis Center and fell ill because of, or relating to, Legionnaires' disease and suffered damages arising therefrom.[3]  These suits alleged Defendants Carpenter or All Pro were negligent in maintaining their hot tub displays, and such negligence caused the outbreak of Legionnaires' disease at the fair.

¶ 7    On October 5, 2020, Plaintiff brought an action for declaratory relief, arguing, in relevant part, the Policy's Fungi or Bacteria Exclusion bars insurance coverage. The Policy's Fungi or Bacteria Exclusion provided,

---

[2] Each Defendant in the case *sub judice* except Mary Belue as personal representative of the estate of Delmer Eugene Belue, Jack Clinard, N.C. Dep't of Agriculture & Consumer Serv.'s, Peggy Duncan, Denice Williams, Crystal Holder, Randy Houston, and James Clow, was a party to these original suits.

[3] Claimant Kimberly Grant ("Defendant Grant") was the only claimant who did not specify whether she did or did not enter the Davis Event Center.  Defendant Grant's "Damages" section provided little information, only stating she "attended the 2019 NCMSF on September 15, 2019."  Thus, this Court is unable to determine whether Defendant Grant entered the Davis Event Center.

Additionally, we note the only record information regarding damages incurred by Defendants Mary Belue as personal representative of the Estate of Delmer Eugene Belue, Jack Clinard, Peggy Duncan, Denice Williams, Crystal Holder, Randy Houston, and James Clow is found in Plaintiff's amended complaint: "The above-identified persons and estates have filed suit and/or asserted claims against Carpenter and/or All Pro for injury or death due to Legionnaires' disease allegedly contracted from Carpenter's hot tub display located in the Davis Event Center at the 2019 NC Mountain State Fair."

> This insurance does not apply to:
>
> **Fungi or Bacteria**
>
> **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

However, the Policy's Consumption Exception provided the Fungi or Bacteria Exclusion did "not apply to any 'fungi' or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption." Based on the Fungi or Bacteria Exclusion, Plaintiff alleged in its complaint it had no "duty to defend or indemnify Carpenter [or] All Pro" from their present suits.

¶ 8     On November 16, 2020, after Plaintiff filed its original complaint, various Defendants filed a motion to change venue to Buncombe County, North Carolina. Additional claimants filed suits against Defendants All Pro and Carpenter, and as a result, Plaintiff filed an amended complaint on December 1, 2020, to include these additional claimants. Defendants filed a motion to stay the proceeding on December

31, 2020. On January 11, 2021, Defendants All Pro and Carpenter filed another motion to change venue with the trial court, again requesting the venue be moved to Buncombe County "[f]or the convenience of witnesses and to promote the ends of justice." Shortly thereafter, on March 22, 2021, Plaintiff moved for judgment on the pleadings. On May 17, 2021, Plaintiff withdrew its motion for judgment on the pleadings solely as it related to Defendant North Carolina Agriculture & Consumer Services.

¶ 9      All of the parties' motions came on for hearing before the trial court on May 25, 2021. By order entered June 7, 2021, the trial court denied Defendants' motion to change venue but granted Defendants' motion to stay the proceedings. The trial court denied Plaintiff's motion for judgment on the pleadings, finding "the exception to the bacteria exclusion in the insurance policy in question is ambiguous as applied to the facts alleged in the underlying cases" and thus, "there is at least a mere possibility that the policy covers this situation and the facts alleged, giving the Plaintiff a duty to defend in the underlying cases." Plaintiff filed a timely notice of appeal of the trial court's order.

## II.      Jurisdiction

¶ 10      At the outset, we note that "an appeal of an order denying . . . [a] motion for judgment on the pleadings is an interlocutory appeal." *Paquette v. County of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002); *see Webb v. Nicholson*, 178 N.C.

App. 362, 363, 634 S.E.2d 545, 546 (2006). Since "there is no right of appeal from an interlocutory order," we must first determine whether Plaintiff's appeal is properly before us. *Larsen v. Black Diamond French Truffles, Inc.*, 241 N.C. App. 74, 76, 772 S.E.2d 93, 95 (2015); *see also Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 207, 240 S.E.2d 338, 343 (1978) (explaining the purpose of this rule "is to prevent fragmentary, premature and unnecessary appeals by permitting the trial divisions to have done with a case fully and finally before it is presented to the appellate division").

¶ 11    As a general rule, a party may appeal an interlocutory order if

> (1) the order is final as to some claims or parties, and the trial court certifies pursuant to N.C.G.S. § 1A-1, Rule 54(b) that there is no just reason to delay the appeal, or (2) the order deprives the appellant of a substantial right that would be lost unless immediately reviewed.

*Currin & Currin Constr., Inc. v. Lingerfelt*, 158 N.C. App. 711, 713, 582 S.E.2d 321, 323 (2003).

¶ 12    "[A]n interlocutory order concerning the issue of whether an insurer has a duty to defend in the underlying action 'affects a substantial right that might be lost absent immediate appeal.'" *Cinoman v. Univ. of N.C.*, 234 N.C. App. 481, 483, 764 S.E.2d 619, 621-22 (2014) (quoting *Lambe Realty Inv., Inc. v. Allstate Ins. Co.*, 137 N.C. App. 1, 4, 527 S.E.2d 328, 331 (2000)); *see Integon Nat'l Ins. Co. v. Villafranco*, 228 N.C. App. 390, 392, 745 S.E.2d 922, 925 (2013); *Enter. Leasing Co. Southeast v. Williams*,

177 N.C. App. 64, 67-68, 627 S.E.2d 495, 498 (2006); *Carlson v. Old Republic Ins. Co.*, 160 N.C. App. 399, 401, 585 S.E.2d 497, 499 (2003). Here, the trial court's denial of judgment on the pleadings also determined that Plaintiff had a duty to defend against the underlying claims and stayed this action until the scope of Plaintiff's alleged duty to indemnify could be resolved. Since the issue of whether Plaintiff actually has a duty to defend the underlying actions is directly implicated in this matter, it affects a substantial right. As such, Plaintiff's appeal is properly before us.

### III. Standard of Review

¶ 13 This court reviews a trial court's denial of a motion for judgment on the pleadings *de novo*. *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 51, 790 S.E.2d 657, 659 (2016); s*ee Fisher v. Town of Nags Head*, 220 N.C. App. 478, 480, 725 S.E.2d 99, 102 (2012); *see also Bauman v. Pasquotank Cnty. ABC Bd.*, 270 N.C. App. 640, 642, 842 S.E.2d 166, 168 (2020) ("Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court.").

¶ 14 A motion for a judgment on the pleadings "must be carefully scrutinized lest the nonmoving party be precluded from a full and fair hearing on the merits." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). "On a motion for judgment on the pleadings, all well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's

pleadings are taken as false." *CommScope Credit Union*, 369 N.C. at 51, 790 S.E.2d at 659 (cleaned up) (quoting *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 682-83, 360 S.E.2d 772, 780 (1987)); *see Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499. For the purpose of the motion, "[a]ll allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499 (citations omitted). Judgment on the pleadings is proper when "the pleadings fail to reveal any material issue of fact with only questions of law remaining." *Fisher*, 220 N.C. App. at 480, 725 S.E.2d at 102 (citing *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499).

¶ 15        We note that the construction and interpretation of an insurance contract is a question of law, and thus the question of Plaintiff's "duty to defend may be resolved by judgment on the pleadings." *Erie Ins. Exch. v. Builders Mut. Ins. Co.*, 227 N.C. App. 238, 244, 742 S.E.2d 803, 809 (2013); *see Crandell v. Am. Home Assurance Co.*, 183 N.C. App. 437, 440, 644 S.E.2d 604, 606 (2007) ("This duty to defend is ordinarily measured by the facts as alleged in the pleadings." (cleaned up)).

## IV.    Discussion

¶ 16        Plaintiff's arguments on appeal are premised upon its assertion it has no duty to defend Defendants All Pro and Carpenter's underlying suits. As a general rule, an "insurer's duty to defend the insured is broader than its obligation to pay damages

incurred by events covered by a particular policy." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). Our courts determine whether an insurer has a duty to defend by examining the facts of the pleadings. *Id.* "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Crandell v. Am. Home Assurance Co.*, 183 N.C. App. 437, 440, 644 S.E.2d 604, 606 (2007) (quoting *Waste Management of Carolinas, Inc.*, 315 N.C. at 691, 340 S.E.2d at 377). The "mere *possibility* that the insured is liable (and that the potential liability is covered) suffice[s] to impose a duty to defend upon the insurer." *Naddeo v. Allstate Ins. Co.*, 139 N.C. App. 311, 319, 533 S.E.2d 501, 506 (2000) (quoting *Waste Management of Carolinas, Inc.*, 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2). Notwithstanding this, "if the facts are not even arguably covered by the policy, then the insurer has no duty to defend." *Waste Management of Carolinas, Inc.*, 315 N.C. at 692, 340 S.E.2d at 378; s*ee also Crandall*, 183 N.C. App. at 440, 644 S.E.2d at 606.

¶ 17      To determine whether an insurer has a duty to defend an underlying lawsuit against an insured, we utilize a "comparison test." *Crandell*, 183 N.C. App. at 440, 644 S.E.2d at 606; *Holz-Her U.S. Inc. v. United States Fid. & Guar. Co.*, 141 N.C. App. 127, 128, 539 S.E.2d 348, 349 (2000); *Smith v. Nationwide Mut. Fire Ins. Co.*, 116 N.C. App. 134, 135, 446 S.E.2d 877, 878 (1994). Under the comparison test, "the

pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." *Erie Ins. Exch.*, 227 N.C. App. at 244-45, 742 S.E.2d at 809.

¶ 18        It is important to note that, in this case, Plaintiff's Fungi or Bacteria Exclusion operates to exclude coverage.   Our Supreme Court, in *State Capital Insurance Company v. Nationwide Mutual Insurance Company*, explained the different rules of construction for an insurance policy provision which *extends* coverage and an insurance policy provision which *excludes* coverage:

> provisions of insurance policies and compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction. *See Moore v. Hartford Fire Insurance Co.*, 270 N.C. 532, 155 S.E. 2d 128 (1967); *Jamestown Mutual Insurance Co. v. Nationwide Mutual Insurance Co.*, 266 N.C. 430, 146 S.E. 2d 410 (1966). On the other hand, . . . provisions which exclude liability of insurance companies are not favored and therefore all ambiguous provisions will be construed against the insurer and in favor of the insured. *Wachovia Bank & Trust Co. v. Westchester Fire Insurance Co.*, 276 N.C. 348, 172 S.E. 2d 518 (1970).

*State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986).  The Fungi or Bacteria Exclusion falls into the latter category, and thus, we review it accordingly.

## A. Fungi or Bacteria Exclusion

¶ 19        Plaintiff first argues the Fungi or Bacteria Exclusion fully applies to all of

Defendants' pleadings. We disagree.

Plaintiff's Fungi or Bacteria Exclusion states,

> This insurance does not apply to:
>
> **Fungi or Bacteria**
>
> **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

As such, Plaintiff is not obligated to defend the underlying suits if 1) "bodily injury" was caused by " 'fungi' or bacteria," and 2) this " 'fungi' or bacteria" was "on or within a building or structure."

The terms of the Policy define "bodily injury" as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." We define "bodily injury," then, as set out in the Policy. *Cf. Holz-Her U.S. Inc.*, 141 N.C. App. at 129, 539 S.E.2d at 350 (defining the term "occurrence" as defined in the insurance policy). Both Plaintiff and Defendants concede Legionnaires' disease is a form of legionellosis, which is caused by inhaling water droplets containing the *Legionella* bacteria. Thus, it is undisputed the bodily injuries alleged in the underlying suits arose due to the "actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of" the *Legionella*

bacteria.

¶ 22 The key to this case, however, is whether the pleadings allege *Legionella* bacteria was "on or within a building or structure" so as to subject the underlying suits to the Bacteria and Fungi Exclusion. The Fungi or Bacteria Exclusion's terms "on," "within," "building," and "structure" are not defined within the Policy. We presume these terms to be nontechnical and, thus, "can be given the same meaning they usually receive in ordinary speech." *Waste Management of Carolinas, Inc.*, 315 N.C. at 694, 340 S.E.2d at 379; *see Allstate Ins. Co. v. Chattert*on, 135 N.C. App. 92, 95, 518 S.E.2d 814, 817 (1999) ("Use of the ordinary meaning of a term is the preferred construction . . . .").

¶ 23 Here, Plaintiff concedes the Davis Event Center is a "building." Thus, we must determine if the underlying complaints allege the *Legionella* bacteria was "on" or "within" the Davis Event Center. After a careful review of the record, we find all but one of the underlying claimants specifically state they entered the Davis Event center where Defendants All Pro and Carpenter's hot tubs were on display. Notably, Kimberly Grant ("Defendant Grant") is the only claimant who did not claim she entered the Davis Event Center. Defendant Grant stated she only "*attended* the 2019 NCMSF on September 15, 2019." (emphasis added). Moreover, the record offers little information regarding whether Defendants Mary Belue as personal representative of the Estate of Delmer Eugene Belue, Jack Clinard, Peggy Duncan, Denice Williams,

Crystal Holder, Randy Houston, and James Clow entered the Davis Event Center. Indeed, the only pertinent information for these Defendants is found in Plaintiff's amended complaint: "The above identified persons and estates have filed suit and/or asserted claims against Carpenter and/or All Pro for injury or death due to Legionnaires' disease allegedly contracted from Carpenter's hot tub display located in the Davis Event Center at the 2019 NC Mountain State Fair." This is not sufficient.

¶ 24        Without acknowledgment from these eight Defendants, the lack of specificity within the pleadings and underlying complaints as to whether Defendants actually entered the Davis Event Center or where they encountered *Legionella* bacteria creates ambiguity. The trial court was left to consider if *Legionella* bacteria was "on" or "within" the Davis Event Center. These "pleadings . . . disclose a *mere possibility* that . . . [Defendants All Pro and Carpenter are] liable and that the potential liability is covered." *Naddeo*, 139 N.C. App. at 319, 533 S.E.2d at 506. The bodily injuries resulting from the *Legionella* bacteria, therefore, potentially are not barred by the Fungi or Bacteria Exclusion, and thus potentially covered by the Policy. *See Crandell*, 183 N.C. App. at 443, 644 S.E.2d at 608 ("Since we cannot conclude that the facts alleged in the underlying complaint are not even arguably covered by the policy, we must hold that American Home had a duty to defend . . . ." (internal quotation marks omitted)). Furthermore, Plaintiff "could reasonably ascertain facts that, if proven,

would be covered by its policy" by inquiring of these eight Defendants whether they entered the Davis Event Center. *Waste Management of Carolinas, Inc.*, 315 N.C. at 691, 340 S.E.2d at 374-75. Consequently, the trial court did not err in its denial of Plaintiff's motion for judgment on the pleadings.

## B. Consumption Exception

¶ 25 Even if the pleadings did not show the possibility that the underlying suits are not barred by the Fungi or Bacteria Exclusion, Plaintiff nonetheless has a duty to defend under the Consumption Exception.

¶ 26 The Consumption Exception is an exception to the Fungi or Bacteria Exclusion. It provides: "[The Fungi or Bacteria Exclusion] does not apply to any 'fungi' or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption." Because there is no disagreement that Legionnaires' disease is caused by a bacterium, the question before us becomes what constitutes a "good intended for bodily consumption." Since the Policy does not define "good" or "bodily consumption," we look to their ordinary meanings to deduce the definition of each term. *Eerie Ins. Exch.*, 227 N.C. App. at 245, 742 S.E.2d at 810.

¶ 27 Turning first to "good[,]" *Black's Law Dictionary* defines a "good" as "1. [t]angible or moveable personal property other than money; esp., articles of trade or items of merchandise . . . 2. Things that have value, whether tangible or not . . . ." *Goods*, BLACK'S LAW DICTIONARY (11th ed. 2019). Here, the "good" in question is a

hot tub and, more specifically, the water therein. This Court has not yet addressed whether the water within a hot tub is considered a "good"; therefore, we are guided by the analysis in other jurisdictions' judicial decisions. In *Nationwide Mutual Fire Insurance Company v. Dillard House, Inc.,* plaintiff filed a declaratory judgment action arguing it was not liable to defend an underlying suit wherein a man died from legionnaires' disease after bathing in a hotel's hot tub. 651 F. Supp. 2d 1367, 1369 (N.D. Ga. 2009) [hereinafter *Dillard House*]. The primary insurance and umbrella insurance policy offered by the plaintiff in *Dillard House* both contained bacteria exclusions and consumption exceptions like the one in the case *sub judice*. *Id.* at 1370. The court, analyzing whether the hot tub's water constituted a "good" for the purpose of the consumption exceptions, concluded: "[W]ater in a hot tub is a good—indeed, it may most specifically be considered an 'economic good,' since it gives economic utility to the hot tub and because water is a commodity for which hotels and other users pay." *Id.* at 1378; *see also Acuity v. Reed & Assocs. of TN, LLC*, 124 F. Supp. 3d 787, 795 (W.D. Tenn. 2015); *Westport Ins. Corp. v. VN Hotel Group, LLC*, 761 F. Supp. 2d 1337, 1346 (M.D. Fla. 2010), *remanded on other grounds,* 513 Fed. App'x 927 (11th Cir. 2013) (unpublished) ("At the outset, the court determined that bathing water in a hotel hot tub is a good, and there is no basis for deviating from that reasoning here.").

By concluding that a patron's use of and bathing in a hot tub gives the water

economic utility, *Dillard House* established that the water within a hot tub constitutes a "good." We find the reasoning within *Dillard House* persuasive and adopt it herein. Surely, the water within Defendants All Pro and Carpenter's hot tub provided economic utility. Indeed, Defendants All Pro and Carpenter could have displayed their hot tubs without water, but the sight of the swirling water, smell of steam, and evaporation of vapors within the atmosphere of the Davis Event Center was utilized as a marketing device to attract customers to purchase a hot tub. The water within the hot tubs, by virtue of its marketing connection with the final product, was a part of the commodity for which purchasers of the hot tub paid when purchasing a hot tub from Defendants' All Pro and Carpenter. Therefore, notwithstanding that patrons did not bathe within Defendants All Pro and Carpenter's hot tubs at the Davis Event Center, the water therein constituted a "good" as it provided value to Defendants All Pro and Carpenter's selling of the hot tubs. Accordingly, the primary issue then becomes whether Defendant All Pro and Carpenter's hot tubs were intended for "bodily consumption." "Bodily" is defined as "1: having a body or a material form: PHYSICAL, CORPOREAL[;] 2 a: of or relating to the body[;] 2 b: concerning the body." *Dillard House*, 651 F. Supp. 2d at 1379 (emphasis omitted).

¶ 29        The term "consumption," however, is susceptible to multiple reasonable interpretations. Black's Law Dictionary defines "consumption" as "[t]he act of

destroying a thing by using it; the use of a thing in a way that exhausts it." *Consumption*, BLACK'S LAW DICTIONARY (11th ed. 2019). *Dillard House* relies on Webster's Third New International Dictionary, Unabridged and defined "consumption" as

> 1 a: the act or action of consuming or destroying[;]
>
> 1 b: the wasting, using up, or wearing away of something[;]
>
> 2: *the utilization of economic goods in the satisfaction of wants* or in the process of production resulting in immediate destruction (as in the eating of foods), gradual wear and deterioration (as in the habitation of dwellings), no change aside from natural decay (as in the enjoyment of art objects), or transformation into other goods (as in manufacturing).

*Dillard House*, 651 F. Supp. 2d at 1378 (emphasis omitted) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (2002)); *accord Westport Ins. Corp.*, 761 F. Supp. 2d at 1347-48. The *Dillard House* court found the second definition of "consumption" to be applicable, explaining "[s]urely, a hotel guest who bathes in a hot tub does so as a mean of indulging, or 'satisfying,' a desire, or 'want.' Given the second *Webster's* definition, the court finds that water in a hot tub falls squarely within a reasonable interpretation of the phrase 'good . . . intended for consumption.' " *Dillard House*, 651 F. Supp. 2d at 1378-79.

¶ 30        We are persuaded by *Dillard House*'s definition of "consumption" and adopt it here. Moreover, the term "bodily" as used in the Consumption Exception is properly

viewed as a modifier to "consumption." *Westport Ins. Corp.*, 761 F. Supp. 2d at 1347. Therefore, this Court finds *Dillard House*'s and *Westport Insurance Corporation*'s conclusion that "bodily consumption" is defined as "the utilization of economic goods in the satisfaction of wants which relate to the body" is applicable in the case *sub judice.  Id.* at 1348 (internal quotation marks omitted).

¶ 31    We pause to note Plaintiff asserts that, because Defendant All Pro and Carpenter's hot tubs were intended for marketing, it falls outside the definition of "consumption."  Plaintiff's argument misses the point.  The question is not whether Defendant All Pro and Carpenter's hot tubs were intended for consumption or marketing, but whether the water therein was.[4]  Thus, having established that the water within the hot tubs is a "good," we next must determine whether the water was intended for the utilization of economic goods in the satisfaction of wants which relate to the body.

¶ 32    After a careful review of the record, we conclude the water within Defendant All Pro and Carpenter's hot tubs was intended to satisfy the wants which relate to the patrons' bodies.  Although Defendant All Pro and Carpenter could have chosen to

---

[4] It is the water inside the hot tub, not the hot tub itself, which was the culprit of creating *Legionella* Bacteria.  *See* MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/legionnaires-disease/symptoms-causes/syc-20351747 (last visited July 14, 2022) ("Most people catch Legionnaires' disease by inhaling the bacteria from *water* or soil." (emphasis added)).

display their hot tubs without water, they did not. Rather, the circulating water within the hot tubs was intended to attract patrons to Defendant All Pro and Carpenter's display at the Davis Event Center by offering an experience to interact with the hot tub in operation. Patrons could feel the mist and heat of the hot tubs, put their hands into the water, and smell its mist. Surely experiencing and possessing the ability to touch the water and inhaling and ingesting the water vapor caused patrons to satisfy their bodily wants by interacting with the hot tubs' water.

¶ 33        Our holding today is not novel in its conclusion. In *Wesport Insurance Corporation v. VN Hotel Group*, *LLC*, the underlying complaints alleged hotels caused an accumulation of Legionella bacteria when they negligently maintained their potable water and plumbing system, and, thus, the underlying complainants "were infected with Legionnaires' disease when they *inhaled and ingested* water vapor from the guest room showers and hotel spa tub." 761 F. Supp. 2d at 1340 (emphasis added). Examining the insurance policy offered by plaintiff, the trial court found "the facts alleged . . . satisfy the Consumption Exception." *Id.* at 1348. The patrons in this case, likewise, were infected with Legionnaires' disease after inhaling and ingesting the water vapor from Defendants All Pro and Carpenter's hot tubs.

¶ 34        In sum, a reasonable interpretation of the Consumption Exception illustrates the underlying pleadings fall under this provision. The water within Defendants All Pro and Carpenter's hot tubs is a good which was intended to satisfy a patron's wants

by allowing them to touch the water and inhale and ingest the water vapor. As such, Plaintiff has a duty to defend the underlying suits per the terms of the Consumption Exception.

**C. Duty to Indemnify**

¶ 35         Finally, Plaintiff argues since it has no duty to defend the underlying suits, it therefore has no duty to indemnify Defendants All Pro and Carpenter. The insurer's duty to defend is

> broader than the duty to indemnify *only* "in the sense that an unsubstantiated allegation requires an insurer to defend against it so long as the allegation is of a covered injury; however, even a meritorious allegation cannot obligate an insurer to defend if the alleged injury is not within, or is excluded from, the coverage provided by the insurance policy."

*Kubit v. MAG Mut. Ins. Co.*, 210 N.C. App. 273, 279, 708 S.E.2d 138, 145 (2011) (quoting *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 7, 692 S.E.2d 605, 610-11 (2010)). Thus, "[b]ecause the duty to defend may be broader than the duty to indemnify we address the duty to defend because if it fails, so too does the duty to indemnify." *N.C. Farm Bureau Mut. Ins. Co. v. Phillips*, 255 N.C. App. 758, 764, 805 S.E.2d 362, 366 (2017). In the case *sub judice*, we are holding Plaintiff *does* have a duty to defend Defendants All Pro and Carpenter; as such, we need not reach the merits of whether Plaintiff has a duty to indemnify Defendants All Pro and Carpenter.

## V. Conclusion

Based on the foregoing, we conclude ambiguity exists as to whether the *Legionella* bacteria was "on" or "within" the Davis Event Center, and, as a result, there is a mere possibility that the underlying suits are not barred by the Fungi or Bacteria Exclusion. Accordingly, Plaintiff has a duty to defend the underlying suits. Moreover, because the water within Defendants All Pro and Carpenter's hot tubs was a good intended for the satisfaction of wants which relate to the body, Plaintiff's duty to defend is also triggered by the Consumption Exception. Accordingly, we affirm the order of the trial court.

AFFIRMED.

Judges MURPHY and HAMPSON concur.